CUDAHY PACKING CO., LTD. *v.* HOLLAND, ADMINISTRATOR OF THE WAGE AND HOUR DIVISION, U. S. DEPARTMENT OF LABOR.

No. 245. Argued February 4, 1942.—Decided March 2, 1942.

*Messrs. Stephen C. Hartel* and *Leopold Stahl,* with whom *Messrs. Robert E. Sher* and *James V. Hayes* were on the brief, for petitioner.

*Mr. Warner W. Gardner,* with whom *Solicitor General Fahy* and *Messrs. Richard S. Salant,* and *Irving J. Levy,* and *Miss Bessie Margolin* were on the brief, for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Of the several questions raised by this record only one requires our attention: Whether under the Fair Labor Standards Act, 52 Stat. 1060, 29 U. S. C. § 201, *et seq.,* the Administrator of the Wage and Hour Division of the Department of Labor has authority to delegate his statutory power to sign and issue a subpoena duces tecum.

On application of respondent, pursuant to § 9 of the Act, the District Court for Eastern Louisiana ordered petitioner to show cause why it should not be compelled to obey a subpoena duces tecum. The subpoena, issued by a regional director of the Wage and Hour Division,

commanded the production at New Orleans, Louisiana, before a specified officer of the Division, of all books, papers, and records showing for a period of eighteen months after the effective date of the Wage and Hour provisions of the Act the hours worked by employees each working day and each working week, all wages paid, all purchases made and shipments received, and all goods sold, shipped, delivered, transported, or offered for sale at petitioner's Shreveport, Louisiana, plant.

The District Court denied petitioner's motion to dismiss the proceeding for want of jurisdiction, and ordered it to produce the demanded books, papers, and records relating to wages and hours, but left undecided, until again presented to the court in the course of investigation, the further question whether the books and records relating to purchases and shipments specified in the subpoena should be produced. The Court of Appeals for the Fifth Circuit affirmed, 119 F. 2d 209, specifically ruling that the subpoena was validly issued and that the court had jurisdiction to enforce it. We granted certiorari, 314 U. S. 592, on a petition which presented as a ground for reversal the want of authority in the regional director to issue the subpoena and, as a reason for allowing the writ, the conflict on this point of the decision below with that of the Circuit Court of Appeals for the First Circuit in *Lowell Sun Co.* v. *Fleming*, 120 F. 2d 213, certiorari granted, 314 U. S. 599.

By § 11 of the Act the Administrator and his designated representatives are authorized to conduct investigations which he may deem necessary "to determine whether any person has violated any provision of this Act, or which may aid in the enforcement of the provisions of this Act." The Act does not define the Administrator's power to issue subpoenas or specifically authorize him to delegate it to others. But, for the purposes of any hearing or investigation, § 9 of the Act makes applicable to the powers and

360

duties of the Administrator, the Chief of the Children's Bureau,[1] and the industry committees,[2] the subpoena provisions of §§ 9 and 10 of the Federal Trade Commission Act. 15 U. S. C. §§ 49 and 50. The Administrator is thus given all the powers with respect to subpoenas which are conferred upon the Federal Trade Commission, and no more. Under § 9 of the Trade Commission Act the Commission may require the attendance and testimony of witnesses, and production of documents by subpoena; and any members of the Commission may sign the subpoenas. The Commission may apply to any district court within whose jurisdiction an investigation is carried on for an order compelling compliance with a subpoena.

The Administrator argues that he is given authority to delegate to regional directors the signing and issuance of subpoenas by § 4 (c) of the present Act, and that, in any case, this authority is to be implied from the structure of the Act and the nature of the duties which are imposed upon him. Section 4 (c) provides: "The principal office of the Administrator shall be in the District of Columbia, but he or his duly authorized representative may exercise any or all of his powers in any place." On its face this seems no more than a definition of the geographical or territorial jurisdiction of the Administrator and his representatives. The designation of the District of Columbia as the location of the Administrator's principal office is qualified by the provision that either the Administrator or his representative may exercise "his powers" in "any place." Only if such is its meaning does § 4 (c) comport with the structure and related provisions of the Act.

---

[1] The Chief of the Children's Bureau administers the child labor provisions of the Act.

[2] The function of the industry committees and their relation to the Administrator are discussed in *Opp Cotton Mills* v. *Administrator*, 312 U. S. 126.

If, as the Administrator contends, the section is to be read as authorizing delegation of the subpoena power, that authority is without limitation. He may confer the power on any employee appointed under § 4 (b), whom "he deems necessary to carry out his functions and duties," or even on those who render the voluntary and uncompensated service which he may accept under that section. Moreover, if so read, § 4 (c) likewise gives the Administrator unrestricted authority to delegate every other power which he possesses, and would render meaningless and unnecessary the provisions of § 11 authorizing the Administrator to delegate his power of investigation to designated representatives.

If such is the meaning of the Act, he could delegate at will his duty to report periodically to Congress (§ 4 (d)), to appoint industry committees and their chairmen, to fix their compensation and prescribe their procedure (§ 5), to approve or disapprove their reports by orders whose findings of fact, if supported by substantial evidence, are conclusive (§ 10), to define certain terms used in the Act (§ 13), to provide by regulations or orders for the employment of learners and handicapped workers (§ 14), as well as other duties. A construction of the Act which would thus permit the Administrator to delegate all his duties, including those involving administrative judgment and discretion which the Act has in terms given only to him, can hardly be accepted unless plainly required by its words.

The Administrator seeks to meet this difficulty by construing § 4 (c) as authorizing the delegation of some but not all of his administrative functions. But we cannot read "any or all" as meaning "some." And in any case if only some functions can be delegated, we are afforded no legislative guide for determining which may and which may not be delegated. We think that the words of the section, read in their statutory setting, make it reasonably

plain that its only function is to provide that the Administrator and his representatives may exercise either within or without the District of Columbia such powers as each possesses. This construction is fully supported by the legislative history of § 4 (c).[3]

---

[3] S. 2475, passed by the Senate on July 31, 1937 (81 Cong. Rec. 7957), and sent to the Conference Committee, provided for a Labor Standards Board, and contained § 3 (e), which read: "The principal office of the Board shall be in the District of Columbia, but it may meet or exercise any or all of its powers at any other place." Section 12 (b) of this bill also specifically authorized the Board to delegate its subpoena power. The House Committee on Labor, to which the Senate bill was referred, amended it to provide for an Administrator instead of a Board (see 82 Cong. Rec. 1391), but it included a § 3 (d) corresponding to § 3 (e) of the Senate bill, save for the substitution of the Administrator for the Board. Section 11 (b) of the bill sponsored by the House Committee also authorized any employee designated by the Administrator to subpoena witnesses. This bill, however, was recommitted to the Committee by the House on December 17, 1937 (82 Cong. Rec. 1835), and the Committee reported out a new bill on April 21, 1938 (83 Cong. Rec. 5680), which placed the administration in charge of the Secretary of Labor rather than an Administrator, contained no section comparable to § 3 (e) of the Senate bill or § 3 (d) of the recommitted House bill, and in § 7 applied §§ 9 and 10 of the Federal Trade Commission Act to the powers and duties of the Secretary. The bill with these changes passed the House on May 24, 1938 (83 Cong. Rec. 7449) and went to the Conference Committee.

The Conference put the Administrator rather than the Secretary in charge of Administering the Act, and included the present § 4 (c). The Conference also retained the House bill's adoption by reference of §§ 9 and 10 of the Federal Trade Commission Act, but extended their operation to investigations as well as hearings, and made them applicable to the powers and duties of the Administrator, the Chief of the Children's Bureau, and the industry committees. 83 Cong. Rec. 9247-8.

The inclusion of § 4 (c), closely resembling § 3 (e) of the Senate bill and § 3 (d) of the recommitted House bill, both of which gave separate specific authority to delegate the subpoena power, indicates that the purpose of the Conference, and of Congress in adopting the Act, was not to grant a general substantive power of delegation, including that

The Administrator also urges that his authority to delegate the subpoena power is to be inferred from the nature of his duties and from the fact that under § 11 he may through designated representatives gather data and make investigations authorized by the Act. He points to the wide range of duties imposed upon him, the vast extent of his territorial jurisdiction, and the large number of investigations required for the enforcement of the Act. From this he argues that Congress must have intended that he should be permitted to delegate his authority to sign and issue subpoenas. But this argument loses force when examined in the light of related provisions of the Act and of the actual course of Congressional legislation in this field.

Unlimited authority of an administrative officer to delegate the exercise of the subpoena power is not lightly to be inferred. It is a power capable of oppressive use, especially when it may be indiscriminately delegated and the subpoena is not returnable before a judicial officer. Under the present Act, the subpoena may, as in this case, be used to compel production at a distant place of practically all of the books and records of a manufacturing business, covering considerable periods of time. True, there can be no penalty incurred for contempt before there is a judicial order of enforcement. But the subpoena is in form an official command, and even though improvidently issued it has some coercive tendency, either because of ignorance of their rights on the part of those whom it purports to command or their natural respect for

over subpoenas, but to define the places where powers otherwise granted should be exercised. The addition in § 4 (c) of the phrase "or his designated representative," the equivalent of which did not appear in either the House or Senate bills, must be taken merely as recognizing that the Administrator or his subordinates could exercise elsewhere than in the District of Columbia the powers which each had under other provisions of the Act.

what appears to be an official command, or because of their reluctance to test the subpoena's validity by litigation. All these are cogent reasons for inferring an intention of Congress not to give unrestricted authority to delegate the subpoena power which it has in terms granted only to the responsible head of the agency.

The subpoena power differs materially in these respects from the power to gather data and make investigations which is expressly made delegable by § 11. Without the subpoena that power is, in effect, a power of inspection at the employer's place of business to be exercised only on his consent. It is much less burdensome than the requirement of his selection of great numbers of books and papers and their production at other places. Because of these differences, it seems to us fairly inferable that the grant of authority to delegate the power of inspection, and the omission of authority to delegate the subpoena power, show a legislative intention to withhold the latter. Moreover, if a subpoena power in the regional directors were to be implied from their delegated authority to investigate, we should have to say that Congress had no occasion expressly to grant the subpoena power to the Administrator, who also has the power to investigate, and that the grant to him was superfluous and without meaning or purpose.

The entire history of the legislation controlling the use of subpoenas by administrative officers indicates a Congressional purpose not to authorize by implication the delegation of the subpoena power. The Interstate Commerce Act,[4] the National Labor Relations Act,[5] and the Federal Trade Commission Act,[6] whose subpoena provisions were adopted by the present Act and by the Pack-

---

[4] 25 Stat. 859, 49 U. S. C. § 12.

[5] 49 Stat. 456, 29 U. S. C. § 161 (1).

[6] 38 Stat. 722, 15 U. S. C. § 49.

ers and Stockyards Act,[7] all fail to grant authority to delegate the issuance of subpoenas. It appears that none of the agencies administering these acts has construed the authority of its head to include the power to delegate the signing and issuance of subpoenas.[8] On the other hand, Congress, in numerous cases, has specifically authorized delegation of the subpoena power.[9] In others it has granted the power to particularly designated subordinate officers or agents, thus negativing any implied power in the head to delegate generally to subordinates.[10] The

[7] 42 Stat. 168, 7 U. S. C. § 222.

[8] See Monograph of the Attorney General's Committee on Administrative Procedure, Part 11, Interstate Commerce Commission, Sen. Doc. No. 10, 77th Cong., 1st Sess., p. 26. *Id.*, Part 5, National Labor Relations Board, pp. 18–19; *Id.*, Part 6, Federal Trade Commission, Sen. Doc. No. 186, 76th Cong., 3d Sess., p. 18; also Final Report of the Attorney General's Committee on Administrative Procedure (1941), Appendix K, pp. 414, 419. Apparently the actual issuance of subpoenas, though not their signing, is delegated to subordinates in some of these agencies. We are not concerned here with the validity of such a practice, since both the signing and issuance of subpoenas is delegated by the Administrator.

[9] Veterans Administration Act, 49 Stat. 2033, 38 U. S. C. § 131; Railroad Unemployment Insurance Act, 52 Stat. 1107, as amended, 45 U. S. C. § 362 (a) (m); Walsh-Healey (Public Contracts) Act, 49 Stat. 2038, 41 U. S. C. § 39; Merchant Marine Act, 52 Stat. 954, 46 U. S. C. § 1124 (a); Federal Power Act, 49 Stat. 857, 16 U. S. C. § 825f (b); Securities Act of 1933, 48 Stat 85, 15 U. S. C. § 77s (b); Securities Exchange Act of 1934, 48 Stat. 900, 15 U. S. C. § 78u (b); Public Utility Holding Company Act, 49 Stat. 831, 15 U. S. C. § 79r (c).

[10] Communications Act, 48 Stat. 1096, 47 U. S. C. § 409; Bureau of Marine Inspection and Navigation Act, 49 Stat. 1382, 46 U. S. C. § 239 (e); Civil Aeronautics Act of 1938, 52 Stat. 1021, 49 U. S. C. § 644; Motor Carrier Act, 49 Stat. 550, 49 U. S. C. § 305 (d); Longshoremen's and Harbor Workers' Comp. Act, 44 Stat. 1438, 33 U. S. C. § 927.

The grant of the subpoena power by the Fair Labor Standards Act to the Chief of the Children's Bureau and to the industry committees

suggestion that the Administrator is given authority to delegate the subpoena power because the applicable Trade Commission Act authorizes individual members of the Commission as well as the Commission itself to sign subpoenas overlooks the fact that the Administrator alone occupies a position under this Act corresponding to that of the Commissioners under their Act. The structure of the Trade Commission Act lends no support to the view that the Administrator has an implied power to delegate the signing and issuance of subpoenas to persons undesignated by the statute, a power not granted to or exercised by the Commission or its members.

All this is persuasive of a Congressional purpose that the subpoena power shall be delegable only when an authority to delegate is expressly granted. That purpose has been emphasized here not only by the authority expressly given to delegate the power to conduct investigations, and in the adoption by reference of the subpoena provisions of the Federal Trade Commission Act, which contain no authority to delegate, but by the legislative history of the present Act, which shows that the authority to delegate the subpoena power was eliminated by the Conference Committee from the bills which each House had adopted.[11] Such authority expressly granted in the bill which passed the Senate, was rejected by the Conference Committee. It also discarded the provisions of the House bill which committed the administration of the Act to the Secretary of Labor, who has a general power of delegation under Rev. Stat. § 161, 5 U. S. C. § 22, and placed in his stead the Administrator, who was given only the subpoena powers of the Federal Trade Commission incorporated in the House bill.

is not of this class, however, since they perform functions which the Administrator does not control and could not exercise himself. In these respects they occupy an independent status under the Act.

[11] See note 3, *supra*.

We cannot assume that Congress was of the opinion that the present agency, when appropriately organized for the purpose, would be any the less able to function without the power in the Administrator to delegate the signing and issuance of subpoenas than the Federal Trade Commission, the Interstate Commerce Commission, and other agencies which have not been given and do not assert the power. Nor can we assume, as the Government argues, that Congress is wholly without design in withholding the power in this case and granting it in others, or even if it had been, that it is any part of the judicial function to restore to the Act what Congress has taken out of it. Even though Congress has underestimated the burden which it has placed upon the Administrator, which is by no means clear, we think that the legislative record establishes that Congress has withheld from him authority to delegate the exercise of the subpoena power, and that this precludes our restoring it by construction.

*Reversed.*

MR. JUSTICE DOUGLAS, dissenting:

We have here the narrow but important question as to the power of the Administrator to delegate his power to issue a subpoena. That problem does not involve questions as to the scope of the subpoena issued or the fact that it required documents in Shreveport to be produced at New Orleans. Statements in the opinion of the Court as to the "oppressive use" of the subpoena introduce issues wholly irrelevant to the single question before us. Those issues would not be changed one iota had the Administrator himself signed this subpoena. And if the policy underlying the opinion is a desire to see a more restrictive and discriminating use of the subpoena power, the requirement that the Administrator alone exercise the power seems idle. For his duties under this Act are

manifold and far flung. The Act extends to thousands upon thousands of persons and businesses. It is estimated that the Act covers 15,500,000 persons employed by more than 360,000 employers in 48 States, the District of Columbia, Alaska, Hawaii, Puerto Rico, and the Virgin Islands. The Administrator has 13 regional directors and one territorial representative. He has about 2200 employees. For the fiscal year ended June 30, 1941, there were 41,399 complaints received, 48,449 plant inspections made, 1,749 cases litigated, 6,000 subpoenas issued.

The problem of enforcement is intricate and exacting. If the Administrator must issue subpoenas, it seems hardly likely that he can do anything but sign them in blank. If he tried to do anything but formulate the general policy to govern the exercise of the subpoena power, he could perform little more than ministerial acts. Certainly he cannot be expected to relieve his regional offices of all questions as to where hearings shall be held, what documents are necessary for a hearing, what asserted violations should be investigated, which employer will make full and free disclosure, which will act only under the compulsion of a subpoena, and similar minutiae of daily administration. The Administrator in Washington can hardly exercise an independent judgment as to what the range or course of a particular investigation should be in remote Alaska or Puerto Rico. At least, he cannot do so unless the processes of law enforcement are to come to a standstill. Yet those matters control the nature, scope and content of subpoenas issued. Such functions must of necessity rest largely with the investigating and enforcement representatives of this kind of an administrative agency.

It would seem that his functions in this regard must of necessity largely lie in the formulation of a general policy which is to govern the exercise of the subpoena power. He has formulated that policy. The instructions to his

subordinates direct a discriminating and sparing use of the subpoena power,[1] a restriction of the scope[2] of subpoenas *duces tecum,* and a regard for the convenience of those whose records are sought.[3]   Delegation is a matter of degree.   An authority need not be delegated completely or not at all.   It is sufficient that the administrative officer supervise and direct the execution of his duties.   So far as the subpoena power is concerned, it would seem that the Administrator has satisfied all statutory demands in this situation by his selection of the limited group which can issue subpoenas, by formulating the policy to guide them, and by ratifying a subpoena issued by his subordinate.

We need not, however, rest on that alone.   The subpoena power is the concomitant of the power to investigate.   Congress has specifically provided that the power to make and conduct investigations may be delegated. Sec. 11 (a) provides in part:

---

[1] The Administrator's Confidential Manual provides:

"The use of subpoenas should be restricted entirely to cases where difficulties have been met with in the course of inspection.  If the evidence or documents sought have been refused or if the witnesses from whom information is requested refuse to be frank or require protection from coercion by their employer, the use of subpoenas will be helpful and proper.  Inspectors *must,* however, first make an inspection of the plant and make a real attempt to secure the necessary information in the usual way prior to the issuance of subpoenas. The subpoena power should be used sparingly and only when all other means have failed."

[2] "The inspector must limit the demand in the subpoena to those records and those periods of time which are indispensable for his inspection."   *Id.*

[3] "The person subpoenaed must be given a reasonable time to produce the records or to appear.   The place at which he is requested to appear should be accurately described and be *reasonably nearby.*   The time at which he is to appear should be a reasonable hour and one fixed so that any possible interference with the individual's business will be reduced to a minimum."   *Id.*

"The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this Act, and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this Act, or which may aid in the enforcement of the provisions of this Act."

But now we are told that that power when delegated is only a power to be exercised with the employer's consent; that if resistance is encountered, the only one who can sign the subpoena to obtain that data is the Administrator. The power to delegate the authority to make investigations is certainly the greater of the two powers. In fact, the decision to make the investigation is the significant and controlling one. Once that is made, the decision to issue a subpoena under this Act must rest with the regional offices if it is to be an informed one. Without the subpoena power the power to investigate will often be an empty one.

Hence, in view of the nature of the Administrator's functions and the fact that the power to make investigations can be delegated, the lesser but companion power to delegate the issue of subpoenas should be implied as an incident of the office.

A subpoena of course exerts a coercive influence. So does an investigation. So does all law enforcement. And any power, including the judicial power, may be abused. But as I have said, we have here no question of abuse of power. We cannot assume that the Administrator would haul a business into court where the representative of the Administrator abused the subpoena power. At least, we should assume that where the Administrator

seeks enforcement of the subpoena and stands behind his subordinate who has issued the subpoena, the subpoena is as much the Administrator's as if he had signed it. Cf. *Norris* v. *United States,* 257 U. S. 77, 82.

The reasons for holding that authority to delegate this power is an incident of the office are certainly no less cogent than those underlying the cases which hold that an administrative officer may delegate the function of holding hearings without express statutory authority. As stated by Chief Justice Hughes in *Morgan* v. *United States,* 298 U. S. 468, 481, "Assistants may prosecute inquiries. Evidence may be taken by an examiner." Such a delegation has been approved under the Fair Labor Standards Act. *Southern Garment Mfrs. Assn.* v. *Fleming,* 122 F. 2d 622. Can it be that the power to hold hearings and take evidence is so unimportant as compared with the power to sign subpoenas that the power to delegate the one but not the other can be implied? Can it be that the requirements of "practicable administrative procedure" (*Morgan* v. *United States, supra,* p. 481) are relevant and controlling in the one instance but not in the other? Both the power to conduct hearings and the power to issue subpoenas are intermediate steps in administrative procedure. The findings of the examiner are advisory only; this kind of subpoena is a command without legal sanction unless supported by a court decree. But the function of the examiner is not simply ministerial. The role which he fills is significant. The very essence of a fair hearing may depend on his conduct. If that function may be delegated without express statutory authority, it should follow *a fortiori* that the lesser subpoena power may also be delegated by reason of the requirements of "practicable administrative procedure."

The legislative history of this Act does not stand in the way. There is no indication whatsoever that the choice of the House bill as against the Senate bill was in any

way influenced by the presence in the latter of an express power of the proposed Board to delegate its subpoena power. The controversy centered on the question as to where administration of the Act should be lodged. See H. Rep. No. 1452, 75th Cong., 1st Sess.; H. Rep. No. 2182, 75th Cong., 3d Sess.; S. Rep. No. 884, 75th Cong., 1st Sess. As a matter of fact, if we are to speculate as to the intent of Congress on this point, we must assume that all delegation of the subpoena power was not precluded. The provisions of §§ 9 and 10 of the Federal Trade Commission Act were "made applicable to the jurisdiction, powers, and duties of the Administrator." § 9. The Federal Trade Commission Act lodges the subpoena power in the Commission. § 9. But it also provides that any member of the Commission may sign subpoenas. § 9. If the Commission has a limited power of delegation, it is hard to see why the Administrator has none. Logical difficulties prevent literal incorporation of the whole of § 9 into the Fair Labor Standards Act. But it certainly is impossible to deduce that a more stringent rule governs the Administrator than the Commission.

Nor can it be inferred that, because Congress has expressly granted delegation of the subpoena power under some statutes but not under others, the power may not be implied. The omission of that power in a particular statute may be an historical accident or a matter of design. Whether or not the power can fairly be implied as an incident of a particular office must depend on the nature of that office, the other statutory provisions which govern it, and the legislative history of its creation. The farthest we need go here is to say that where the legislative history is inconclusive the power to delegate is not necessarily precluded.

A requirement that the Administrator himself exercise the subpoena power at this stage of the enforcement of

373

the law may well retard the social and economic program which the Act inaugurated. We should be alert to prevent sheer technicalities from interposing delay in a law enforcement program. If the subpoena power is abused, Congress and the courts are open to remedy it. Meanwhile, the subpoena power should be treated sympathetically and regarded as a necessary legal sanction to obtain compliance with the law by those who, having lost the battle in the legislature, seek a delaying action in the courts.

I am authorized to state that MR. JUSTICE BLACK, MR. JUSTICE BYRNES, and MR. JUSTICE JACKSON join in this dissent.