**BOWLES, Price Adm'r, v. ABENDROTH.**
**Civil Action No. 2564.**

District Court, D. Oregon.

Feb. 11, 1946.

F. E. Wagner, Dist. Enforcement Atty., and Cecelia P. Gallagher, Enforcement Atty., both of Portland, Or., for applicant.

Reuben G. Lenske, of Portland, Or., for respondent.

McCOLLOCH, District Judge.

There is before me the question whether, in view of the Supreme Court's decision in Cudahy Packing Co. v. Holland, 315 U.S. 357, 788, 62 S.Ct. 651, 86 L.Ed. 895, holding that the subpœna power under the Fair Labor Standards Act is non-delegable, the plaintiff can, under substantially similar language, delegate the subpœna power granted by the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq. The subpœna, which is entitled "Inspection Requirement," was signed at Washington, D. C., on August 23, 1944, by "James F. Brownlee, Acting Price Administrator."

I had not known until a few days ago that any OPA subpœnas presented for enforcement in this court had been signed under delegated authority. On the contrary, I had been assured that there had been no attempt to delegate the subpœna power in this district.

A recent opinion by Judge St. Sure [1] in San Francisco (Bowles, Adm'r, v. Gantner & Mattern Co., D.C., 64 F.Supp. 383) wherein it was related that the Inspection Requirement there considered was "signed by one Robert Parks, identified as 'Price Administrator Office of Price Administration,'" caused me to look into our files more closely, with the following result:

OPA Inspection Requirements Proffered for Enforcement in the United States District Court for Oregon

Bowles v. Northwest Poultry and Dairy Products Company, 9 Cir., 148 F.2d 820; Id., 9 Cir., 153 F.2d 32. Inspection Requirement signed by Chester Bowles, Price Administrator, at Washington, D. C., on or before August 14, 1944.

Bowles v. Abendroth, 9 Cir., 151 F.2d 407. Inspection Requirement dated August 23, 1944, signed by James F. Brownlee, Acting Price Administrator, at Washington, D. C.

Bowles v. Atlantic Lumber Co., D.C.* Inspection Requirement dated October 18, 1944, signed by Chester Bowles, Price Administrator, at Washington, D. C.

Bowles v. Bronson, D.C., 63 F.Supp. 189. Inspection Requirement dated November 29, 1944, signed by Chester Bowles, Price Administrator, at Washington, D.C.

This case was tried before me earlier and in the Circuit Court of Appeals, 9 Cir., 151 F.2d 407, on the assumption that the Inspection Requirement had been signed and issued by Administrator Bowles. The pertinent part of the order to show cause prepared and submitted by the attorneys for plaintiff at the outset of the case read: "It appearing from the application filed herein and the annexed affidavit * * * that the Respondent after request made upon him for permission to inspect and copy certain

---

[1] This Dean of judges might well have asked "Who is this mystery man? Not appointed by the President, not confirmed by the Senate, he issues a document as Price Administrator."

* No opinion for publication.

specified records and after the service upon him of an Inspection Requirement issued and signed by the Administrator for the Office of Price Administration has refused and does still refuse to permit the inspection and copying of said specified records * * *."

Though the language of the Price Control Act is acknowledged to be similar to the language of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., it is argued that the legislative history of the Price Control Act compels a different conclusion from Cudahy Packing Co. v. Holland, the argument being based on the section by section report of the Senate Committee.[2] That report was:

"Section 201(a) authorizes the Administrator to hire such employees, utilize and to establish such regional, local, or other agencies, and to accept such voluntary and uncompensated services as he deems to be necessary. He may perform his duties through such employees or agencies by delegating to them any of the powers given to him by the bill. * * *

"Section 201(b) provides that the principal office of the Administrator shall be in the District of Columbia but authorizes the Administrator, or any representative or other agency to whom he may delegate any or all of his powers, to exercise such powers in any place. * * *"

Sen.Rept.No.931, 77th Cong., 2nd Session, pp. 20, 21.

The same argument was made in principle and rejected in Cudahy Packing Co. v. Holland, from which I quote:

"The Administrator argues that he is given authority to delegate to regional directors the signing and issuance of subpoenas by § 4(c) of the present Act, 29 U.S. C.A. § 204(c), and that in any case this authority is to be implied from the structure of the Act and the nature of the duties which are imposed upon him. Section 4(c) provides: 'The principal office of the Administrator shall be in the District of Columbia, but he or his duly authorized representative may exercise any or all of his powers in any place.' On its face this seems no more than a definition of the geo-

graphical or territorial jurisdiction of the Administrator and his representatives. The designation of the District of Columbia as the location of the Administrator's principal office is qualified by the provision that either the Administrator or his representative may exercise 'his powers' in 'any place.' Only if such is its meaning does § 4(c) comport with the structure and related provisions of the Act.

"If, as the Administrator contends, the section is to be read as authorizing delegation of the subpoena power, that authority is without limitation. He may confer the power on any employee appointed under § 4(b), whom 'he deems necessary to carry out his functions and duties', or even on those who render the voluntary and uncompensated service which he may accept under that section. Moreover, if so read, § 4 (c) likewise gives the Administrator unrestricted authority to delegate every other power which he possesses, and would render meaningless and unnecessary the provisions of § 11 authorizing the Administrator to delegate his power of investigation to designated representatives.

"If such is the meaning of the Act he could delegate at will his duty to report periodically to Congress, § 4(d), to appoint industry committees and their chairmen, to fix their compensation and prescribe their procedure, § 5, to approve or disapprove their reports by orders whose findings of fact, if supported by substantial evidence, are conclusive, § 10, to define certain terms used in the Act, § 13, to provide by regulations or orders for the employment of learners and handicapped workers, § 14, as well as other duties. A construction of the Act which would thus permit the Administrator to delegate all his duties, including those involving administrative judgment and discretion which the Act has in terms given only to him, can hardly be accepted unless plainly required by its words.

"The Administrator seeks to meet this difficulty by construing § 4(c) as authorizing the delegation of some but not all of his administrative functions. But we cannot read 'any or all' as meaning 'some.' And in any case if only some functions can

---

[2] Presumably, the argument includes the right to delegate the power to make regulations, not contestable under this Act, Sec. 204(d), except in the Emergency Court of Appeals and on appeal from it to the Supreme Court.

I do not understand how the report of a Committee of one branch of Congress can evidence the legislative intent of the other branch.

be delegated, we are afforded no legislative guide for determining which may and which may not be delegated. We think that the words of the section, read in their statutory setting, make it reasonably plain that its only function is to provide that the Administrator and his representatives may exercise either within or without the District of Columbia such powers as each possesses. This construction is fully supported by the legislative history of § 4(c)." 315 U.S. at page 360 et seq., 62 S.Ct. at page 653, 86 L.Ed. 895.

And after reviewing the history of the subpœna power in other Federal legislation, Chief Justice Stone who wrote the Cudahy opinion said: "All this is persuasive of a Congressional purpose that the subpœna power shall be delegable only when an authority to delegate is expressly granted." 315 U.S. at page 366, 62 S.Ct. at page 656, 86 L.Ed. 895.

Because it is clear to me that the subpœna power can no more be delegated under the Price Control Act than it can be delegated under the Fair Labor Standards Act, the application herein for an enforcement order will be denied for want of jurisdiction.

By volume, the Price Administrator has become the chief law enforcement officer of the United States. He should therefore set an example of self-restraint. Cudahy Packing Co. v. Holland was decided one month and one day after the passage of the Price Control Act. No doubt the decision was disturbing to the Price Administrator's militant legal staff. It would have been simple for them to have brought a test case and obtained an early ruling on their view that the Cudahy decision did not bind them. Instead, they appear to have preferred the method of fait accompli or, as it is called in less obvious circumstances, the method of administrative interpretation.

Application denied.[3]

### Appendix

The relevant provisions of the Price Control Act are as follows: Sec. 202.

"(b) The Administrator is further authorized, by regulation or order, to require any person who is engaged in the business of dealing with any commodity * * * to make and keep records and other documents, and to make reports, and he may require any such person to permit the inspection and copying of records and other documents, * * *. The Administrator may administer oaths and affirmations and may, whenever necessary, by subpena require any such person to appear and testify or to appear and produce documents, or both, at any designated place.

"(c) For the purpose of obtaining any information under subsection (a), the Administrator may by subpena require any other person to appear and testify or to appear and produce documents, or both, at any designated place. * * *

"(e) In case of contumacy by, or refusal to obey a subpena served upon, any person referred to in subsection (c), the district court for any district in which such person is found or resides or transacts business, upon application by the Administrator, shall have jurisdiction to issue an order requiring such person to appear and give testimony or to appear and produce documents, or both; and any failure to obey such order of the court may be punished by such court as a contempt thereof. The provisions of this subsection shall also apply to any person referred to in subsection (b), and shall be in addition to the provisions of section 4(a)."

---

[3] Since preparing the opinion I have learned that other subpoenas than listed above have been issued in this District as follows:

Bowles v. Lux dba Columbia Empire Market, D.C., No. 2922,[1] Subpoena Duces Tecum signed by Chester Bowles at Washington 8/17/45; Bowles v. Fossoti dba Portland Egg and Poultry Company, D. C., No. 2939,[1] Inspection Requirement signed by James G. Rogers, Acting Price Administrator 7/17/45, Subpoena Duces Tecum signed by McDannell Brown, District Director, 10/9/45; Bowles v. Staley and Doane dba Workingman's Friend Meat Market, D.C.,[1] Subpoena Duces Tecum signed at Portland, Oregon, by Lewis J. Bronaugh, Acting District Director 1/22/46; Bowles v. Northwest Poultry and Dairy Products Company, 9 Cir., 148 F.2d 820; Id., 9 Cir., 153 F. 2d 32, No. 2565, two Inspection Requirements issued at Portland, Oregon, by Frederic F. Janney, Acting District Director, 10/17/44. The last two Inspection Requirements were directed to third parties, the same as in Bowles v. Shawano Nat. Bank, 7 Cir., Nov. 13, 1945, 151 F.2d 749.

[1] No opinion for publication.