**PORTER, Price Administrator, v. ROACH.**

Civil Action No. 3093.

District Court, D. Oregon.

Oct. 22, 1946.

On Motion to Arrest Judgment Nov. 18, 1946.

W. A. Stockman, Enforcement Atty., and J. Robert Patterson, Asst. U. S. Atty., both of Portland, Or., for plaintiff.

F. E. Wagner, of Portland, Or., for defendant.

McCOLLOCH, District Judge.

I think I may claim to have pioneered in pointing out that the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., does not contain the broad powers of delegation and re-delegation contained in the later war time statutes. Bowles v. Abendroth, D.C., 64 F.Supp. 704. Earlier I had held that the Administrator could not give enforcement attorneys a blank ticket to sue in his name. Both of these holdings were reversed. Bowles v. Abendroth, 9 Cir., 151 F.2d 407; Bowles v. Wheeler, 9 Cir., 152 F.2d 34, certiorari denied.

Now I am asked to pass on the question whether the Administrator can make a general delegation to regional subordinates of the Administrator's primary and major function—price fixing.

Counsel refer me to the language of Sections 201(a) and 201(b) of the Price Control Act, as explained by the Senate Committee Report No. 931, 77th Cong. 2nd Session pp. 20, 21. But that language, taken from the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., was interpreted in Cudahy Packing Co. of Louisiana v. Holland, 315 U.S. 357, 788, 62 S.Ct. 651, 86 L.Ed. 895, not to warrant delegation by the Wages and Hours Administrator of any of his basic authority.

OPA's view seems to be that if the Supreme Court had the Cudahy case before it again, the Court would hold differently. The practice of speculating on changed and changing opinion in the Supreme Court has been criticized in this Circuit, and I will not follow it here.

Since I think the words of the statute should be construed as they were construed in the Cudahy case, and since I think they cannot mean different things in different Acts, I hold that the Price Administrator could not validly make a delegation of his price fixing powers to a regional administrator.

I realize it may be said the question is the same as the questions in the Wheeler and Abendroth cases, which involved, respectively, suit-bringing and subpoena power. But the questions are not the same, and I think, aside from applying the Cudahy opinion as it was written, it is to be remembered that the war, which brought

forth the emergency powers in the Price Control Act, is over in fact, if not in theory; further, that administrative action in the procedural field is to be tested hereafter by the provisions of the federal Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., enacted by the last Congress. This may become important on other issues presented in the case, but not here discussed.

Based on Findings and Conclusions to be prepared, judgment will be entered dismissing the enforcement proceedings.

### Addendum.

1. The Order No. G–6 was issued by Regional Administrator Baird in San Francisco, May 16, 1945. It purports to fix dollars and cents ceiling prices for roofing in Oregon, except Malheur County, and adjacent counties in the State of Washington.

### McCOLLOCH, District Judge.

On Motion to Arrest Judgment.*

It has been called to my attention that other Regional price orders have been made, and it is suggested that the convening of Congress in several sessions, without repudiating the practice of making Regional orders, constituted legislative ratification.

This is a doctrine that has taken deep root. It may be called the doctrine of invited lawlessness. It is also a doctrine of legislative weakness, of despair that Congress can keep up with the encroachments of manifold agencies in the legislative field. It is a doctrine that amounts to surrender by Congress of a large part of its constitutional power.

Strangely, it is a doctrine which Congress, although the subject of it and the victim of it, has never subscribed to. (See the many Committee reports protesting administrative enlargement of power.) It is a court made doctrine. For example, Pinkus v. Porter, 7 Cir., 155 F.2d 90, 93.[2]

The doctrine says, if Congress does not detect an agency (of which, it is said, there are as many as there are members of Congress), in a grab for power, or, having detected, does not check it by affirmative action, this shows Congress to have intended in the beginning, that the agency should have the power it claims.

The doctrine lacks reality and is dangerous to our system of divided powers. The courts having made it, should unmake it.

Motion in arrest of judgment is denied.

---

* Mr. Justice Rutledge concurring in Cleveland v. United States, 67 S.Ct. 13, 17, said:

"Notwithstanding recent tendency, the idea cannot always be accepted that Congress, by remaining silent and taking no affirmative action in repudiation, gives approval to judicial misconstruction of its enactments. * * *

"As an original matter, in view of the specific and constitutional procedures required for the enactment of legislation, it would seem hardly justifiable to treat as having legislative effect any action or nonaction not taken in accordance with the prescribed procedures."

2 "[5] Appellee also calls attention to the fact that his practice with respect to the issuance of subpœnas was explained to the Special Committee to Investigate Executive Agencies on June 22, 1944, when the Director of the Litigation Division, Enforcement Department of the Office of Price Administration, testified before that committee. Its policy as to decentralization in all its functions was also fully reported to Congress from time to time. See Hearings on Extension of Emergency Price Control Act, 78th Congress, 2d session, Vol. I, pp. 152, 153. The re-enactment of the Act after such administrative construction was made known to Congress constitutes a legislative ratification of that interpretation. Bowles v. Wheeler, supra [152 F.2d 34, certiorari denied 326 U.S. 775, 66 S.Ct. 265], and cases there cited. See also Porter v. McColloch, 9 Cir., 154 F.2d 876; Bowles v. Griffin, 5 Cir., 151 F.2d 458."

The court is mistaken when it says that Congress re-enacted the Price Control Act *after* June 22, 1944, the date when the Director of the Litigation Division testified. Congress had in fact re-enacted the Act on June 21st, the day *before* the Director testified. (90 Con.Rec. 6369, 6437; 58 Stat. 632).