NATIONAL LABOR RELATIONS BOARD
v. JOHN S. BARNES CORPORATION
et al.

No. 9907.

United States Court of Appeals
Seventh Circuit.

Dec. 9, 1949.

Edward J. Fahy, Rockford, Ill., Shultz & Fahy, Rockford, Ill., and William E. Collins, Rockford, Ill., for appellants.

Robert N. Denham, General Counsel, Washington, D. C., David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, Bernard Dunau, Attorney, National Labor Relations Board, Washington, D. C., for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This in an appeal from an order of the United States District Court for the Northern District of Illinois, Western Division, requiring obedience to certain subpoenas which ordered the respondent, John S. Barnes Corporation, and Ernest J. Svenson, one of its officers, to appear and testify and to produce certain documents and data before a hearing officer of the National Labor Relations Board at a designated time and place.

The subpoenas in question were issued by the Regional Director of the Thirteenth Region of the National Labor Relations Board.

This appeal is predicated on respondents' contention that the National Labor Relations Act gives the power to issue subpoenas only to the Board or one of the members thereof and that such power is not delegable.

The subpoenas were issued in aid of an investigation by the Board into the question of whether the employees of the respondent corporation desired to be repre-

sented in collective bargaining by a labor organization. The parties stipulated that the subpoenas were issued pursuant to the general procedure followed by the National Labor Relations Board; that under this procedure the regional offices are supplied with blank subpoena forms, bearing the seal of the National Labor Relations Board and a signature of a member; that when a written application for a subpoena is filed by a party to a proceeding, the Regional Director inserts the name of the party to be served into one of these blank subpoena forms over the seal of the National Labor Relations Board and over the signature of a member of the National Labor Relations Board; that the party requesting the subpoena is then responsible for the filling-in of the other blanks of the form and for the serving of the subpoena.

The parties stipulated further that in this case the Regional Director, as a party to the proceedings, made application in writing for the issuance of the subpoenas; that the Regional Director approved his own application on behalf of the National Labor Relations Board; and that on January 26, 1949, at the Chicago Regional Office, "the names, dates and other matters were, by or at the direction of said Regional Director, typed into the blank subpoena forms over the signature of John M. Houston, a member of the Board, and over the seal of the National Labor Relations Board."

The respondent contends that since the National Labor Relations Act, as amended, gives no express authority to the Regional Directors of the Board to issue subpoenas, any such authority must depend upon delegation by the National Labor Relations Board; that if the subpoenas issued by the Regional Directors are to be valid, the National Labor Relations Board must have authority to delegate its subpoena powers.

The respondents' first proposition is that the provisions of the National Labor Relations Act, as last amended, 29 U.S.C.A. § 141 et seq., impliedly negative the power of the Board to delegate the authority to issue subpoenas. Section 11(1) of the Act provides as follows:

"For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by sections 9 and 10—

"(1)  The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required. Any member of the Board, or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. * * *"

The respondent points out that Section 11(1) expressly authorizes the Board to delegate to its agents the right to have access to, to examine and to copy any relevant evidence of any person being investigated or proceeded against; that the same section also expressly authorizes the Board to delegate to any agent or agency the power to administer oaths and affirmations, to examine witnesses and to receive evidence; and that the power to issue subpoenas was given only to the "Board, or any member thereof" without any express authorization to delegate this power.

The respondent contends that these express authorizations to the Board to dele-

gate certain of its powers and the failure to expressly authorize the delegation of the subpoena power indicate that Congress did not intend that the Board should have the right to delegate the subpoena power to any agent. If our examination of this question were limited to a consideration of the language contained in Section 11(1) of the Act we would be inclined to agree with this contention of the respondent.

■ However, if we are to determine the intent of Congress, we must go further than an investigation of the language of the particular section of the Act. We must consider the Act as a whole, its various provisions, its purpose, what Congress expected the National Labor Relations Board to accomplish under the Act, and its legislative history.

The mere fact that certain sections of this Act authorize the delegation of certain powers by the Board has not been generally construed as depriving the Board of the power to delegate certain other powers, the delegation of which is not expressly authorized. We find instances of this where the Board has delegated the porformance of certain functions which the Act has expressly said that the Board shall perform. The Board authorizes subordinates to investigate representation petitions, yet Section 9(c) (1) expressly says that "The Board shall investigate such petition[s]." Section 9(e) (1) provides that the Board shall take a secret ballot of the employees to determine if the employees desire a union shop, yet the Board never personally takes such secret ballot.

No one doubts the authority of the Board to delegate to subordinates the performance of these functions even though the delegation of such functions is not expressly authorized by the Act. Is there any substantial reason for distinguishing between the delegation of these powers and the delegation of the subpoena power?

■ By Section 5 of the Act, the Board was given the power "by one or more of its members or by such agents or agencies as it may designate, (to) prosecute any inquiry necessary to its functions in any part of the United States." The issuance of subpoenas is a necessary incident to the power to investigate and prosecute. The nature and scope of the investigation or prosecution will necessarily control the number, type and content of the subpoenas required. In this expressed power to delegate the authority to prosecute we find reason to believe that Congress intended that the Board should also be authorized to delegate the incidental power to issue subpoenas.

■■ Section 6 of the Act also throws light on the question. There the Board is given the power to make, amend and rescind such rules and regulations as may be necessary to carry out the provisions of the Act. Under this broad rule-making power the Board adopted Rule 203.58(c), National Labor Relations Board Rules and Regulations, Series 5, 12 Fed.Reg. 5656, which provides that subpoenas should be issued by the regional director or a hearing officer. We believe that this rule is "necessary to carry out the provisions of the Act." We agree that the Board could not, by its own rule, enlarge its powers beyond the scope intended by 'Congress, but as said in Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 121, 67 S.C. 1129, 1134, 91 L.Ed. 1375: "Such a rule-making power may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has been withheld. See Plapao Laboratories v. Farley, 67 App.D.C. 304, 92 F.2d 228."

The purpose and policy of this Act is described in Section 1(b) as follows: " * * * It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the pub-

lic in connection with labor disputes affecting commerce."

This is a broad purpose and policy. We know that to follow this policy and to accomplish this purpose the administration of the Act must be flexible. The Board consisting of five men is located in Washington, D. C. Its agents and agencies are scattered throughout the territory of the United States, and are constantly engaged in handling an enormous volume of inquiries, investigations and prosecutions, all requiring the issuance of subpoenas.

■ If possible the Act must be so construed as to make its various provisions workable. If the full flow of commerce is to be promoted under this Act, the operations and actions thereunder must be prompt. Undue and unnecessary delays in proceedings of the Board might well render such proceedings ineffective and result in defeating the purposes of the Act. Recognizing the necessity for prompt action, Section 11(1) of the Act, as amended, expressly requires that subpoenas shall be issued *forthwith* upon the application of any party.

If, as the respondents seem to contend, it is necessary for the Board, or a member thereof, to not only sign his name and affix the seal of the Board to each subpoena, but also to fill in all of the blanks and then to issue it to the party or cause it to be served, it would first be necessary to send to the Board a copy of the application for the subpoena, the information required for filling in all of the blanks, and a showing that the applicant for the subpoena was a party to the particular proceedings. If the proceedings were being held on the West coast or at any other far distant point, the expression "forthwith" would lose all significance.

Section 11(1) of the Act, as amended, also provides that "Within five days after the service of a subpoena" the person on whom it was served may petition the Board to revoke and the Board shall revoke such subpoena if in its opinion the evidence required is not relevant or is not sufficiently described. If we were to adopt the restrictive construction of this section for which the respondents contend, we would necessarily be compelled to also hold that all such petitions must be submitted to the Board and must be acted on by not less than three members of the Board. This would necessarily require sending to the Board sufficient information concerning the matters under investigation to make it possible for the Board to intelligently pass upon such petition.

If we were to hold that the Board, or one of its members, must personally do every act essential to the execution and issuance of each subpoena in every proceeding being conducted under this Act throughout the United States and its Territories, and that the Board must then, as a Board, pass upon every petition for the revocation of any subpoena, it would be physically impossible for the Board and its members to perform the many other more important duties which they are required to perform to accomplish the purpose of the Act.

Prior to 1947 Section 11(1) of the Act gave the Board, or any member thereof, the power to issue subpoenas but did not make the issuance mandatory. Under the original Act the members of the Board were therefore required to exercise discretion in the issuance of subpoenas. In June, 1947, however, this section of the Act was amended to provide that the Board, or any member thereof, *shall* upon application of any party *forthwith* issue to such party subpoenas. This amendment made the issuance of subpoenas mandatory. All discretion as to their issuance was removed. The only function in connection with subpoenas which is not now a ministerial act under this section is the determination to either grant or refuse the petition to revoke.

The practice of the Board of signing subpoenas in blank, and then delegating the power to issue them, was known to Congress as early as 1941. In that year the Monograph on the National Labor Relations Board, prepared by the Attorney General's Committee on Administrative Procedure (Sen.Doc. No. 10, 77th Cong., 1st Sess. p. 18), described the procedure as follows: "Since the Act specifically authorizes only members of the Board to issue subpenas, they are, as a matter of

form, always signed by one of the Board members. In practice, however, the Board now considers and passes upon subpena questions only when, in the course of pre-complaint investigation, a regional office requests process to compel a recalcitrant employer to permit the field examiner to examine his records. The Regional Directors and trial examiners, who are furnished with a supply of subpoenas signed in blank, are authorized to issue subpoenas needed in the trial of a case in accordance with specific instructions given by the Board."

In Cudahy Packing Co. of Louisiana v. Holland, 315 U.S. 357, 365, 788, 62 S.C. 651, 655, 86 L.Ed. 895 the Supreme Court, in discussing the question of delegation of the subpoena power by various agencies, including the National Labor Relations Board, states: "It appears that none of the agencies administering these acts, has construed the authority of its head to include the power to delegate the signing and issuance of subpoenas."

In a footnote to this statement the Court cited the Monograph of the Attorney General's Committee and explained that, "Apparently the actual issuance of subpoenas, though not their signing, is delegated to subordinates in some of these agencies."

Since 1939 the Board has openly and consistently construed the Act as authorizing the delegation of the power to issue subpoenas. All of the published Rules and Regulations of the Board, beginning with Series 2, effective July 14, 1939, up to and including Series 4, effective September 11, 1946, have contained provisions delegating, to the regional directors and hearing officers, the power to issue subpoenas.

We must, therefore, assume that in June, 1947, when Congress amended Section 11(1) of the Act to make the issuance of subpoenas mandatory and to provide for a petition to revoke, Congress was fully aware of the construction the Board had placed on this section and the procedure the Board was following in issuing subpoenas. If Congress had not agreed with the Board's construction and the procedure being followed, the subpoena provisions could have been further amended to expressly prohibit the delegation of the subpoena power by the Board. Failure of the Congress, under these circumstances, to expressly forbid the delegation of subpoena power when amending Section 11(1), must be considered as legislative ratification of the Board's construction and procedure. Pinkus v. Porter, 7 Cir., 155 F.2d 90, 93.

The respondent relies on Cudahy Packing Co. v. Holland, supra, 315 U.S. 357, 788, 62 S.Ct. 651, 86 L.Ed. 895. There the Court held that under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., the Administrator of the Wage and Hour Division of the Department of Labor did not have the authority to delegate his statutory power to sign and issue subpoenas duces tecum. The Administrator derived his subpoena power from the provisions of Sections 9 and 10 of the Federal Trade Commission Act, 15 U.S.C.A. §§ 49 and 50, having been given all of the powers with respect to subpoenas which were conferred on the Federal Trade Commission and no more. Section 9 of the Trade Commission Act provided that the Commission might require the attendance and testimony of witnesses and the production of documents by subpoena and that any member of the Commission might sign the subpoenas. In that case the power of the Commission and, therefore, the power of the Administrator to sign and issue subpoenas involved discretion and was not a ministerial act such as we are here considering. The court there was considering not only the issuance, but also the *signing* of the subpoenas by a subordinate. The Fair Labor Standards Act, Section 4(c), providing that, "The principal office of the Administrator shall be in the District of Columbia, but he or his duly authorized representatives may exercise any or all of his powers in any place" was held to be only a definition of the geographical or territorial jurisdiction of the Administrator and his representatives and not to be an authorization for a delegation of all of the powers of the Administrator. In the instant case the Board relies on Section 5 of the Act as authorization for the delegation only of the power to "prosecute any inquiry neces-

162

sary to its functions" and such other powers as are incidental and necessary to the power to prosecute. In the Cudahy case the court also emphasized the fact that as to that Act a provision expressly granting the authority to delegate the subpoena power had been eliminated when the bill was in Congress.

The Cudahy opinion stated that the Court was not concerned with the validity of the practice of some of the agencies, including the National Labor Relations Board, where "apparently the actual issuance of subpoenas, though not their signing, is delegated to subordinates."

By reason of the above differences we do not consider the Cudahy decision as controlling this case.

In Fleming v. Mohawk Wrecking & Lumber Co., supra, 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375, it was held that under the Emergency Price Control Act, 56 Stat. 23, as amended, 50 U.S.C.A.App. § 901 et seq., the Price Administrator was authorized to delegate to a District Director of Price Administration, the right to sign and issue subpoenas duces tecum. The Price administrator, by order, delegated the function of signing and issuing subpoenas to regional administrators and district directors. Such delegation of power to issue subpoenas was not expressly given by the Emergency Price Control Act. The Supreme Court in that case pointed out that there was no provision specifically authorizing delegation as to a particular function, further distinguished the Cudahy case by the legislative history of the two acts involved: and on those two distinctions and the further distinction that in the Mohawk case the administrator was given a broad rule-making power, the Supreme Court held that Sections 201(a) and 201(b) of that Act should not be read restrictively as similar sections of the Fair Labor Standards Act had been construed in the Cudahy case.

The court in the Mohawk case emphasized "the overwhelming nature of the price control program" and by reason thereof stated that the Price Control Act should be construed "so as to give it the administrative flexibility necessary for prompt and expeditious action on a multitude of fronts." All of the reasons assigned by the Supreme Court for sustaining the validity of the delegation of the subpoena power in the Mohawk case apply to the instant case except that the Act here did make expressly delegable certain powers other than the power to issue subpoenas.

The decision in the Mohawk case is the most recent decision of the Supreme Court dealing with the question of the power of administrative agencies to delegate the authority to issue subpoenas. The decision held that such power need not be expressly given but that the intention of Congress to grant such power may be implied.

 From our consideration of the National Labor Relations Act as a whole, its various provisions, its purpose, its legislative history, and the magnitude of the program involved, we are convinced that Congress did intend to grant to the Board the authority to delegate the power to issue subpoenas even though the power was not expressly granted.

We therefore hold that the subpoenas here in question, issued by the Regional Director pursuant to the Rules and established practice of the Board, were valid.

The order of the District Court is accordingly affirmed.