**Donald WHEELDIN and Admiral Dawson, Appellants,**

v.

**William WHEELER, Appellee.**

**No. 17247.**

United States Court of Appeals Ninth Circuit.

Jan. 30, 1962.

A. L. Wirin, Fred Okrand, Los Angeles, Cal., and Marvin Leon, Beverly Hills, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., and Clarke A. Knicely, Asst. U. S. Atty., Los Angeles, Cal., for appellee. Wright, Wright, Goldwater & Mack by Loyd Wright and Andrew J. Davis, Jr., Los Angeles, Cal., of counsel.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Appellants were on August 7, 1958, subpoenaed to appear before the Unamerican Activities Committee of the United States House of Representatives, which was then proposing to conduct a hearing in Los Angeles. They resisted their duty to comply with the subpoenas, and Appellant Wheeldin's conviction of contempt for failure to respond was upheld by this court in Wheeldin v. United States, 9 Cir., 1960, 283 F.2d 535, following Barenblatt v. United States, 1959, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115.

Appellants have now brought this action for money damages against appellee, a committee investigator who had been instrumental in issuing and serving the subpoenas, and have appealed to this court from judgment of the district court dismissing the action for failure of the complaint to state a claim.[1] The gravamen of their complaint is that the subpoenas were invalidly, maliciously and mischievously issued and served for the sole purpose of exposing them to public

---

1. The action originally sought additional relief and was brought against additional parties defendant, but these claims have already been eliminated. Wheeldin v. Wheeler, 9 Cir., 1960, 280 F.2d 293.

scorn with consequent loss of employment and of esteem. They assert that they have a federal right to protection against such abuse of federal process; that since the subpoenas were not properly issued appellee in securing their issuance and service has subjected himself to personal liability.

The invalidity of the subpoenas, as claimed by appellants, is based upon the fact that they were by the chairman of the committee signed in blank. The names of the appellants as the witnesses subpoenaed were later filled in by the appellee. Appellants assert that no valid subpoenas were issued since the only issuance was of something in blank; that to sanction this practice of signing in blank is in effect to permit a delegation of authority to issue subpoenas; that no power to delegate this authority has been granted.

The practical dilemma faced by those authorized to issue subpoenas has been pointed out by Justice Jackson, concurring in Fleming v. Mohawk Wrecking and Lumber Company, 1947, 331 U.S. 111, 123, 67 S.Ct. 1129, 11 L.Ed. 1375. As he explained, the workload is often such that the authorized individual "might sign large batches of blank subpoenas and turn them over to subordinates to be filled in over his signature. Or he might sign batches of subpoenas already made out by subordinates, probably without reading them and certainly without examining the causes for their issuance or the scope of the information required." [2]

The congressional committee in the case before us investigates through its investigators and one may assume that it would accept their conclusions as to the relevance of any witness' testimony. If, of the alternatives mentioned by Justice Jackson, the former practice is to be deemed an unauthorized delegation of au-

thority while the latter is not, the distinction would appear to be somewhat formal. To the extent that it has force, it should, in our view, have been raised in Wheeldin v. United States, supra, where the appellants resisted their duty to comply. To hold that the personal liability of this appellee must turn on such a distinction would, in our judgment, run counter to the principle of immunity recognized in Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed. 2d 1434. It would permit the rule of that case to be frustrated by a turn of formalities having little, if any, relation to the injurious conduct complained of.

Here the source of the claimed injury is that appellee, through the exercise of his official investigative power and based upon his appraisal of the evidence which would result from the appearance of these appellants, has seen fit to present them to the committee as proposed witnesses. They allege that appellee knew or should have known from his investigation that they had no information useful to the committee. They characterize his conduct as malicious and claim that his motive was to expose them to the abuse and scorn that he knew or should have known the committee would heap upon them. The injurious action of appellee thus followed from the conclusions drawn by him from his investigation, and resulted from the manner in which he has done the very thing he was employed to do. In no respect was the existence or extent of injury affected by the question of whether or not the subpoenas were valid (a question which would, however, affect the duty of appellants to respond).

In Barr v. Matteo, at page 571, 79 S.Ct. 1335, 1339, the reason for the grant of immunity is stated in the following language:

"It has been thought important that officials of government should be

**2.** To the same effect is language by Justice Douglas, dissenting in Cudahy Packing Company, Ltd. v. Holland, 1942, 315 U.S. 357, 368, 62 S.Ct. 651, 657, 86 L.Ed. 1191: "If the Administrator must issue subpoenas, it seems hardly likely that

he can do anything but sign them in blank. If he tried to do anything but formulate the general policy to govern the exercise of the subpoena power, he could perform little more than ministerial acts."

free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government."

The court quoted Judge Learned Hand in Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579, 581:

"Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation * * *."

As to what acts fall within the protected area, the court states in 360 U.S. at page 573, 79 S.Ct. at page 1340:

"It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision,' Spalding v. Vilas, 161 U.S. [483] at page 498, 16 S.Ct. at page 637 [631], [40 L.Ed. 780]—which must provide the guide in delineating the scope of the rule * * *."

We conclude that the conduct complained of falls within the scope of appellee's authority as a committee investigator and relates, in the words of Spalding v. Vilas supra, to "matters committed by law to his control or supervision." As to injuries resulting from such conduct appellee is, under the rule of Barr v. Matteo, immune from liability.

Affirmed.