Orville L. FREEMAN, Secretary of Agriculture of the United States

v.

FIDELITY–PHILADELPHIA TRUST COMPANY.

Misc. No. 3102.

United States District Court
E. D. Pennsylvania.

Dec. 16, 1965.

Irwin Goldbloom, Department of Justice, Washington, D. C., for petitioner.

Dilworth, Paxson, Kalish Kohn, & Dilks, by Aaron M. Fine, Philadelphia, Pa., for respondent.

JOSEPH S. LORD, III, District Judge.

The Secretary of Agriculture petitions to have an administrative subpoena enforced, which the respondent complains is objectionable because: (1) it was not signed and issued by the Secretary himself, (2) it was issued to a corporation not subject to the Secretary's jurisdiction, and (3) it is too broad and burdensome.

## I.

In Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895 (1942), the Supreme Court held, four Justices dissenting, that the Administrator of the Wage and Hour Division of the Department of Labor had no authority under the Federal Trade Commission Act, whose subpoena provisions Congress had made applicable to the Administrator's functions, to delegate to a subordinate his power to sign and issue a subpoena *duces tecum*. In Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947), a somewhat differently constituted

Court[1] unanimously decided that the Emergency Price Control Act did grant authority to its Administrator to delegate the same power to district directors. In neither case was the statutory authorization explicit. Our duty on this petition is to decide whether the subpoena power has been validly delegated by the Secretary of Agriculture to the Director of the Dairy Division of the Consumer and Marketing Service, who signed the instant subpoena.

Essentially, this is a problem of statutory construction in the light of the underlying desideratum of administrative responsibility. In the Cudahy Packing case the majority opinion found that the "entire history of the legislation controlling the use of subpoenas by administrative officers indicates a Congressional purpose not to authorize by implication the delegation of the subpoena power" (315 U.S. at 364, 62 S.Ct. at 655). But in Mohawk Wrecking & Lumber the Court could find no provision in the Price Control Act "negativing the existence of such authority, so far as the subpoena power is concerned" and would not infer "the absence of such authority * * * from the history and content of the Act" (331 U.S. at 121–122, 67 S. Ct. at 1134).

In Cudahy Mr. Justice Douglas wrote in dissent that:

"* * * if the policy underlying the [majority] opinion is a desire to see a more restrictive and discriminating use of the subpoena power, the requirement that the Administrator alone exercise the power seems idle. For his duties under this Act are manifold and far flung. * * *

"If the Administrator must issue subpoenas, it seems hardly likely that he can do anything but sign them in blank. If he tried to do anything but formulate the general policy to govern the exercise of the subpoena power, he could perform little more than ministerial acts. * * *" 315 U.S. at 367–368, 62 S.Ct. at 657.

In Mohawk the same considerations became part of Mr. Justice Douglas' opinion for the Court:

"* * * We would hesitate to conclude that all the various functions granted the Administrator need be performed personally by him or under his personal direction. Certainly, so far as the investigative functions were concerned, he could hardly be expected, in view of the magnitude of the task, to exercise his personal discretion in determining whether a particular investigation should be launched. * * * To tempt the Administrator to solve the problem by supplying all his offices with subpoenas signed in blank would not further the development of orderly and responsible administration. * * *" 331 U.S. at 122–123, 67 S.Ct. at 1135.

Thus, there are differences in the tenor of the two opinions. But the controlling difference is the legislative intent. See Fleming v. Mohawk Wrecking, supra, at 121–122, 67 S.Ct. 1129. Because the subpoena power is "capable of oppressive use, especially when it may be indiscriminately delegated and the subpoena is not returnable before a judicial officer," Cudahy indicates that "[u]nlimited authority of an administrative officer to delegate the exercise of the subpoena power is not lightly to be inferred." 315 U.S. at 363, 62 S.Ct. at 655. But, as Mohawk makes clear, that does not mean that the power to delegate may not be inferred at all. The statutory scheme is controlling.

As we read the statutes from which the Secretary of Agriculture derives his powers, how authoritative Cudahy remains in the face of Mohawk

---

1. Mr. Justice Byrnes had resigned in 1942, Mr. Justice Roberts had retired in 1945, and Mr. Chief Justice Stone, who had written the majority opinion in Cudahy, had died in 1946. Their replacements were, respectively, Mr. Justice Rutledge, Mr. Justice Burton, and Mr. Chief Justice Vinson.

need not concern us here,[2] even though the same subpoena provisions of the Federal Trade Commission Act as were involved in Cudahy (15 U.S.C. §§ 48–50) have been made applicable to the Agricultural Marketing Agreement Act by their incorporation therein (7 U.S.C. § 610(h)). Cudahy does not conclude our inquiry, for the applicable authorizing statutes in each instance must be read together. See Goldberg v. Battles, 196 F. Supp. 749, 752–753 (E.D.Pa.1961), aff'd on opinion below, 299 F.2d 937 (C.A.3, 1962), cert. denied, 371 U.S. 817, 83 S. Ct. 32, 9 L.Ed.2d 58 (1962).

Since 1940, the Secretary of Agriculture has been authorized by statute to delegate "the whole or any part of any regulatory function which the Secretary is, now or hereafter, required or authorized to perform * * * to any officer or employee designated under this section." 5 U.S.C. § 516b. "Regulatory function" is defined in 5 U.S.C. § 516a (b) as

"* * * the making, prescribing, issuing, or promulgating, of a regulatory order; and includes * * * (2) any action which is required or authorized to be performed before, after, or in connection with, such determining, making, prescribing, issuing, or promulgating."

A "regulatory order" is an order which has the "force and effect of law" and which may be made "only after notice and hearing or opportunity for hearing have been given." 5 U.S.C. § 516a(a).

■ The subpoena here challenged was issued in connection with an investigation conducted pursuant to the provisions of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601 et seq. Under § 608, which authorizes the Secretary to conduct investigations, the Secretary is required to "hold one or more hearings, and give due notice and opportunity for interested parties to be

heard." § 608(5). Clearly, the Secretary's action pursuant thereto is the execution of a regulatory function under 5 U.S.C. §§ 516a and 516b, because it is performed "before" or "in connection with" the making of a regulatory order. Similarly, the issuance of the subpoena in such an investigatory proceeding was action authorized to be performed "before" or "in connection with" the making of a regulatory order. Under § 516b, it would properly be delegable.

Moreover, Reorganization Plan No. 2 of 1953, 18 Fed.Reg. 3219, 67 Stat. 633, 5 U.S.C. § 511 note, promulgated pursuant to the Reorganization Act of 1949, 5 U.S.C. § 133z et seq. vested all the functions of the Department of Agriculture, with exceptions not here material, in the Secretary of Agriculture and, in § 4, authorized him to "make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee of the Department of Agriculture of any function of the Secretary * * *."

■ Since this is so, the subpoena power could validly be delegated to the Director of the Dairy Division of the Consumer and Marketing Service. That appears to be precisely what was done, for the Secretary has granted the head of any agency in his Department the authority to "take any action, including the authority to execute any documents * * * and promulgate any rule, regulation, order or instruction, required by law or deemed by him to be necessary and proper to the discharge of the functions assigned to his agency." 29 Fed. Reg. 16212 (1964). By the same regulation, the head of each agency may redelegate the same authority to appropriate officers, and the Director of the Dairy Division was accordingly vested with all the authority of the Administrator of the Agriculture and Marketing Service,[3] the head of his agency. 30

---

2. See, however, the discussion of the "subdelegation" problem in 1 Davis, Administrative Law Treatise, § 9.04 (1958).

3. The agency's name was changed to the Consumer and Marketing Service on February 8, 1965. 30 Fed.Reg. 2160 (1965).

Fed.Reg. 1263 (1965), as amended by 30 Fed.Reg. 6597 (1965). These provisions are certainly broad enough to encompass the issuance of subpoenas *duces tecum.*

■ This is not a case where sensitive constitutional rights are necessarily implicated upon compliance with the subpoena. Compare United States v. Minker, 350 U.S. 179, 186–188, 76 S.Ct. 281, 100 L.Ed. 185 (1956); Shelton v. United States, 117 U.S.App.D.C. 155, 327 F.2d 601 (1963). There is, therefore, no occasion for a deliberately narrow construction of the congressional authorization "in the candid service of avoiding a serious constitutional doubt." United States v. Rumely, 345 U.S. 41, 47, 73 S.Ct. 543, 546, 97 L.Ed. 770 (1953).[4] Respondent, though, would have us, in effect, exclude any authorization except in the most explicit language allowing the subpoena power to be conferred on officials beneath the level of the Secretary. Sound statutory construction, however, does not require judicial myopia in reading legislative intent. Congress need not write only in the largest print or in the blackest ink.

■ Neither does sound administration demand such a limitation of authority. Requiring the Secretary to sign subpoenas personally would not promote administrative responsibility. It is certainly desirable that someone make a determination that the issuance of a subpoena is necessary, but it is by no means assured that the proper person to ask to decide that in each case is a Cabinet officer with widespread responsibility for administration, policy-formulation, collective decision, and presidential advice. If the purpose is that *some* responsible official decide that there is a need for a subpoena, respondent's argument tends to achieve the opposite result by demanding that the duty be placed in the wrong place. In the circumstances, the Director of the Dairy Division was probably the official in the best position to decide whether a subpoena *duces tecum* was necessary. We hold that Congress authorized the Secretary of Agriculture to delegate his subpoena power to a responsible officer in his Department and that the Secretary, through Department regulations, validly delegated that power to the Director of the Dairy Division. This decision finds support in other post-Mohawk cases construing similar statutes. See, e. g., NLRB v. Duval Jewelry Co., 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958); Lewis v. NLRB, 357 U.S. 10, 78 S.Ct. 1029, 2 L.Ed.2d 1103 (1958); Jackson Packing Co. v. NLRB, 204 F.2d 842 (C. A.5, 1953); Goldberg v. Battles, 196 F. Supp. 749 (E.D.Pa.1961), aff'd on opinion below, 299 F.2d 937 (C.A.3, 1962), cert. denied, 371 U.S. 817, 83 S.Ct. 32 (1962).

## II.

Having determined that the subpoena was lawfully issued, we reach respondent's other grounds of objection.

■ Respondent urges that 7 U.S.C. § 610(h) allows the Secretary to subpoena only "milk handlers." Norris Dairy, whose bank records at Fidelity-Philadelphia Trust Company have been subpoenaed, is allegedly not a handler, and consequently, it is argued, neither it nor its bank are subject to the Secretary's subpoena power.

Section 610(h) provides as follows:

"For the efficient administration of the provisions of this chapter, the provisions, including penalties, of sections 48, 49, and 50 of Title 15 [the subpoena provisions of the FTC Act], are made applicable to the jurisdiction, powers, and duties of the Secretary in administering the provisions of this chapter, and to any person subject to the provisions of this chapter, whether or not a corporation.  *  *  *"

4. See also Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); Cole v. Young, 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (1956); Hannegan v. Esquire, 327 U.S. 146, 66 S.Ct. 456, 90 L.Ed. 586 (1946).

Respondent would have us construe the words, "any person subject to the provisions of this chapter," to mean "any person subject to regulation under this chapter." Neither the structure of the statute nor its legislative history will countenance such a constricting construction. In the first place, not only regulation but also investigation is contemplated by the chapter. 7 U.S.C. § 608. In the second place, Congress intended § 610(h) to confer "the same powers subject to the same limitation as in the case of similar proceedings before the Federal Trade Commission" (H.R.Rep.No. 808, 74th Cong., 1st Sess., p. 7 [1935]), and the FTC is not so constricted.

■ It is by now abundantly clear that for an administrative agency to exercise the subpoena power in aid of its investigatory power, it need not show that it has regulatory jurisdiction over the witness subpoenaed. Local 57, Intern. Union of Operating Engineers v. Wirtz, 326 F.2d 467 (C.A.1, 1964); FTC v. Harrell, 313 F.2d 854 (C.A.7, 1963); FTC v. Tuttle, 244 F.2d 605 (C.A.2), cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957); McGarry v. SEC, 147 F.2d 389 (C.A.10, 1945). The subpoena power of an agency

> " * * * is, of course, not confined to those over whom it may exercise regulatory jurisdiction, but to any persons from whom it can obtain information and documents which are relevant and material to its inquiry. The argument of the respondents that they are exempted from the subpoena power of the Commission because the Commission has no regulatory power over them, would be wholly inconsistent with the broad powers of investigation with which the Commission is vested and would circumscribe such power so as to severely restrict its effectiveness. There is no doubt that

administrative agencies vested with such powers may, by compulsory process, require the production of information and documents from third persons who are not within their regulatory jurisdictions if the information sought is necessary and relevant to their authorized and lawful inquiry. * * *" FCC v. Cohn, 154 F.Supp. 899, 906 (S.D. N.Y.1957).

If the subpoena is otherwise valid, respondent is thus not exempt from compliance with it because it is a bank and not a milk handler.

## III.

Respondent maintains that the subpoena is too broad because it requires production of "[a]ll bank statements, canceled checks, deposit slips and other records pertaining to the account designated as the 'Norris Dairy Products, Inc.' account * * * from the opening of said account to the date of your appearance as aforesaid," without limiting the demand to the records of Norris' dealings with Oakland Farms and without limiting the time period for which the records must be produced.

■ The petition for enforcement of the subpoena recites, and respondent at this point has not denied, that an investigation thus far has disclosed that Oakland Farms, a regulated milk handler, has been buying milk from a co-operative association through a broker, Norris Dairy Products; that the basic minimum pricing provisions of the agency's marketing orders may have been violated; and that the cooperative association may have been paying substantial sums to Norris Dairy Products, presumably as unlawful rebates. Since, as the subpoena states,[5] the subject of the investigation is the possible violation of the minimum pricing provisions, we cannot say on this record " 'that any of

5. Cf. Far East Conference v. Federal Maritime Comm'n, 119 U.S.App.D.C. 110, 337 F.2d 146, 151 (1964), cert. denied, 379 U.S. 991, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965); Montship Lines v. Federal Maritime Bd., 111 U.S.App.D.C. 160, 295 F.2d 147, 154–155 (D.C.Cir.1961).

the documents or things called for in any of the subpoenas are immaterial or irrelevant to the proceedings * * *' without an examination of each of the items ordered produced." CAB v. Hermann, 353 U.S. 322, 323, 77 S.Ct. 804, 805, 1 L.Ed.2d 852 (1957). Compare Cooper, Federal Agency Investigations: Requirements for the Production of Documents, 60 Mich.L.Rev. 187, 191 (1961). Indeed, even that alone might not be enough to enable us to ascertain the relevancy of the records to the inquiry. True, the subpoena is broad, but so is the investigation,[6] and the burden of production has been softened by the requirement of the subpoena that the documents be produced at respondent's place of business. See CAB v. Hermann, supra, at 323, 77 S.Ct. 804.

It may well be that at the hearing some or all of the records may turn out to be immaterial or irrelevant, but it is not for us to prejudge those questions at this stage. "Of course this enforcement order leaves open to the respondents ample opportunities for objecting, on relevant grounds, to the admissibility into evidence of any particular document." CAB v. Hermann, supra, at 324, 77 S.Ct. at 805. Our present determination on this score goes no further than to decide that the agency has demanded neither irrelevant·material for a proper purpose nor relevant material for an improper purpose. See United States v. Powell, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); Moore Business Forms v. FTC, 113 U.S.App.D.C. 231, 307 F.2d 188 (1962); FTC v. Standard American, 306 F.2d 231, 234–235 (C.A.3, 1962); Adams v. FTC, 296 F.2d 861, 866 (C.A. 8, 1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962); cf. FCC v. Schreiber, 381 U.S. 279, 291, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). The subpoena must, therefore, be enforced according to its terms.

Counsel will submit an appropriate order within ten (10) days.

6. In Adams v. FTC, infra, a subpoena calling for records for nearly twenty years was upheld because the investigation was to inquire into alleged conspiracies " 'for many years past.' " 296 F.2d at 867.