Wilfredo C. **Limon**,
Complainant/Appellee,
**v.**
Rosa **Camacho**,
Respondent/Appellant,
and
Office of the Attorney General,
Commonwealth of the
Northern Mariana Islands,
Party in Interest.
Appeal No. 94-040
Civil Action No. 93-0508
Labor Case No. 302-91
August 5, 1996

BEFORE: TAYLOR, Chief Justice, VILLAGOMEZ, Justice, and SALAS, Special Judge.

TAYLOR, Chief Justice:

¶1 ■ Appellant, Rosa Camacho, appeals a judgment of the Superior Court which reversed in part a decision of the Director of Labor, rendered under the terms of the Nonresident Workers Act ("NWA"), codified at 3 CMC §§ 4411 through 4452. The Superior Court ordered Ms. Camacho to pay Appellee, Wilfredo C. Limon, a specified amount of unpaid wages and overtime, assessed an equal amount as liquidated damages, and awarded Mr. Limon attorney's fees. We have jurisdiction pursuant to 1 CMC § 3102(a). We affirm.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

### I. Ms. Camacho's Appeal.

¶2 ■ Ms. Camacho presents three[1] issues for our review:

¶3 A. Whether the Superior Court erred in finding that the decision of the Director of Labor was arbitrary and capricious[2] in its determination of Mr. Limon's daily and weekend work schedule. We review de novo the court's determination of whether the decision of the Director of Labor was based upon substantial evidence. *In re Hafa Adai Beach Hotel Extension*, 4 N.M.I. 37, 41 (1993).

¶4 B. Whether the Superior Court erred in determining that the Director of Labor's omission of any award of liquidated damages or attorney's fees constituted an unlawful withholding of agency action. We review de novo the court's determination of whether the Director of Labor misapplied the law. *Id.*

¶5 C. Whether § 4447(d) of the NWA, which mandates an award of liquidated damages and attorney's fees to a prevailing employee without requiring a showing of willfulness, violates the Equal Protection Clause of the

Argued and Submitted May 30, 1996

Counsel for Appellant: Antonio M. Atalig, Saipan.

Counsel for Appellee: Jay H. Sorensen, Saipan.

Counsel for Party in Interest: C. Sebastian Aloot, Acting Attorney General, Saipan.

---

[1] Ms. Camacho's brief combines the first two issues listed here as one, asserting that the Superior Court found both the determination of hours worked and the omission of liquidated damages to be "arbitrary and capricious" on the part of the Director of Labor. Br. for Appellant at 2. However, as discussed below, the Superior Court did not find the omission of liquidated damages to be "arbitrary and capricious." but rather "agency action unlawfully withheld." Because this finding entails a separate legal analysis, we separate the two issues here.

[2] As explained below, the trial court should have applied the "substantial evidence" standard of review rather than the "arbitrary and capricious" standard.

Fourteenth Amendment to the U.S. Constitution and Article 1, § 6 of the Commonwealth Constitution. We review de novo a challenge to the constitutionality of a statute. *Office of Att'y Gen. v. Deala*, 3 N.M.I. 110, 114-15 (1992).

¶6 **II. The Attorney General's Arguments.**

During oral argument the Attorney General's Office (AGO) raised two additional issues not presented below or briefed by the parties to this appeal:

¶7 A. Whether the Superior Court improperly made findings of fact in its review of the Director of Labor's decision; and

¶8 B. Whether under 3 CMC § 4447(d) only the court -- and not the Division of Labor — is authorized to award liquidated damages and attorney's fees to prevailing employees.

¶9 ■ We may consider an issue raised for the first time on appeal in three situations: (1) where the issue is one of law not relying on any factual record; (2) where a new theory or issue has arisen because of a change of law while the appeal is pending; or (3) where plain error occurred and an injustice might result unless we consider the issue. *Castro v. Hotel Nikko Saipan, Inc.*, 4 N.M.I. 268, 276 (1995), *appeal dismissed*, 96 F.3d 1259 (9th Cir. 1996).

**FACTUAL AND PROCEDURAL HISTORY**

¶10 Mr. Limon signed a contract on August 6, 1990, to work as a kitchen helper in Ms. Camacho's bakery for a base hourly wage of $2.15. On October 2, 1991, he filed a complaint with the Division of Labor, alleging that Ms. Camacho failed to pay the hourly contract wage, failed to pay overtime, failed to keep records, and forced him to work outside his job classification. The Chief of Labor issued a determination and notice of violation concurring with these allegations, and setting the matter for hearing. Determination and Notice of Violation and Notice of Hearing (Mar. 17, 1992), Excerpts R. at___.[3] According to the notice of violation, Mr. Limon was entitled to 2,021.5 hours of overtime pay during the period from on October 21, 1990 to October 3, 1991. *Id.*

¶11 The hearing date was continued five times (none of them at Mr. Limon's request) and was finally held on July 13, 1992. According to Mr. Limon, several witnesses who had been available for the earlier dates were not able to attend the July 13th hearing. Only one supporting witness, Sally Domingo, testified on Mr. Limon's behalf. Transcript of Labor Hearing at 96-103 (July 13, 1992) ("Labor Tr."). Both Ms. Domingo and Mr. Limon testified that work in the bakery began at 4:30 a.m. and

ended at 6:00 p.m., six days per week, and that Mr. Limon was told to work on the farm on Sundays. *Id.* at 96, 103 (Ms. Domingo); *id.* at 83 (Mr. Limon). The labor investigator confirmed that this schedule was consistent with what Mr. Limon had told him originally. *Id.* at 33-34.

¶12 Rosa Camacho, Joe Camacho, David Camacho and Rodney Cruz testified in opposition to Mr. Limon's claim. They asserted that Mr. Limon began work at 6:00 a.m. and finished at 2:00 p.m. or 3:00 p.m. *Id.* at 46 (Mr. Cruz); *id.* at 57 (Joe Camacho); *id.* at 67 (Rosa Camacho). However, only Ms. Camacho claimed personal knowledge of Mr. Limon's work schedule. The other witnesses were not directly involved in the bakery operation. Ms. Camacho also claimed that Mr. Limon never did any baking or cleaning, and that his work was restricted to wrapping food items once they were prepared. *Id.* at 80. She stated that the first delivery each morning was at 8:30 a.m. *Id.* at 75. Regarding Mr. Limon's activities on the family farm on Sundays, Ms. Camacho, her son Joe, and Mr. Cruz testified that Mr. Limon's weekend activities were voluntary. *Id.* at 47 (Mr. Cruz); *id.* at 58 (Joe Camacho); *id.* at 68 (Rosa Camacho).

¶13 In his written order, the hearing officer confirmed that Ms. Camacho had failed to keep records and had violated the contract by paying Mr. Limon on a monthly, rather than an hourly, basis. Order at 2 (July 21, 1992)("Labor Order"), Excerpts R. at_____. The hearing officer nevertheless concluded that Mr. Limon had not worked weekends as he alleged, and credited the Camacho's testimony that Mr. Limon worked from 6:00 a.m. to 3:00 p.m., Monday through Friday. *Id.* at 3. As for Mr. Limon's claim that he worked Saturdays in the bakery and Sundays on Ms. Camacho's farm, the hearing officer credited Ms. Camacho's testimony that the business was closed on weekends, and that whatever services Mr. Limon performed on weekends were "done purely on a voluntary basis." *Id.* at 4.

¶14 Mr. Limon filed an administrative appeal, which was heard by a second hearing officer. The notice of appeal cited the unavailability of Mr. Limon's supporting witnesses at the hearing and requested a de novo hearing. The hearing on the appeal was continued another four times, and was finally held on January 8, 1993. The hearing officer who presided at the appeal refused to hear the matter de novo, but agreed to hear additional testimony on the "voluntariness" of Mr. Limon's work and on the "amount of wages due." Transcript of Labor Hearing at 6 (Jan. 8, 1993)("Appeal Tr."), Excerpts R. at ___.

¶15 At the appeal hearing, Mr. Limon presented testimony from two co-workers, Faye Pangelinan and Estrella Gozum, in addition to his own testimony, that he worked from 4:30 a.m. until 6:00 p.m., Monday through Saturday. *Id.* at 12, 14 (Ms. Pangelinan); *id.* at 32 (Ms. Gozum); *id.* at 117 (Mr. Limon). Labor investigator Alfred Pangelinan also testified that he had found Mr. Limon to have kept

---

[3] Counsel for Appellant did not paginate, tab or index the Excerpts of Record as Com. R. App. P. 30(e) requires.

23

this work schedule. *Id.* at 102. Mr. Limon and his supporting witnesses testified further that Mr. Limon worked at the bakery from 2:00 p.m. to 6:00 p.m. on Sundays. *Id.* at 18 (Ms. Pangelinan); *id.* at 35 (Ms. Gozum); *id.* at 121-22 (Mr. Limon). Finally, Mr. Limon testified that he worked Sunday mornings at Ms. Camacho's farm from 6:00 a.m. to 10:00 or 11:00 a.m. *Id.* at 121. This testimony was corroborated by his two coworkers. *Id.* at 19 (Ms. Pangelinan); *id.* at 44-45 (Ms. Gozum). On the issue of "voluntariness," Ms. Pangelinan testified that if Mr. Limon did not go to the farm to work on Sundays, Ms. Camacho's son would "get mad. Very strict." *Id.* at 19.

¶16 Ms. Camacho presented the only contrary testimony at the appeal hearing. She maintained, as she had in the initial hearing, that the bakery was closed on weekends. *Id.* at 48. However, her other testimony varied from that of the initial hearing. She stated that Mr. Limon ceased work anywhere between 11 a.m. and 2 p.m. on weekdays. *Id.* at 77-78. Ms. Camacho also testified that the first delivery of freshly-baked goods to five stores each weekday morning left the bakery at 6:45 a.m. for delivery at 7:00 a.m. *Id.* at 60-61. She claimed that there was sufficient time between 6:00 a.m. and 6:45 a.m. for these goods to be "baked, packaged, [and] put on the truck" for this first delivery. *Id.*[4] Moreover, Mr. Limon introduced into evidence the Labor Investigator's notes of his initial interview with Ms. Camacho on February 29, 1992, which bear her signature, and which indicate that Mr. Limon worked in the bakery "Monday to Saturday." ER's Questionnaire (Feb. 29, 1992) at 2, 4, Suppl. Excerpts R. at 11, 13.[5]

At the conclusion of the hearing, counsel for Mr. Limon requested an award of liquidated damages and attorney's fees. Appeal Tr. at 147. He also submitted a brief to the hearing officer on the issue. Br. on Issue of Liquidated Damages (undated), Suppl. Excerpts R. at 14-15.

In her order on appeal, issued on March 28, 1993, the hearing officer found that Ms. Camacho had "failed to pay at a rate of $2.15 per hour for regular hours worked, and failed to pay for any hours worked on Saturdays or Sundays at either the kitchen or the farm." Order on appeal at 3 (Mar. 28, 1993), Excerpts R. at__. As for the precise hours worked, the hearing officer found that Mr. Limon "help[ed] in food preparation *prior to the actual cooking* which begins at 6:00 a.m." *Id.* at 2 (emphasis added). However, the order on appeal did not disturb -- or even mention -- the initial hearing officer's determination that Mr. Limon had worked from 6:00 a.m. to 3:00 p.m. on weekdays. The order on appeal addressed only weekend work, stating that Mr. Limon worked in the bakery from 6:00 a.m. to 4:30 p.m. on Saturdays and 2:00 p.m. to 6:00 p.m. on Sundays, and at the farm between 7:00 a.m. and 11:00 a.m. on Sundays. *Id.* at 2. The order found that none of this work was "voluntary." *Id.* at 2-3. Lastly, while the order on appeal found that Ms. Camacho had underpaid Mr. Limon in the amount of $1,603.47, it did not mention any award of attorney's fees or liquidated damages to Mr. Limon.

¶17 Mr. Limon timely appealed to the Superior Court. He argued that the order on appeal failed to address the proper computation of hours and failed to award liquidated damages and attorney's fees. In its decision, the trial court held that the agency's order on appeal was arbitrary and capricious in failing to address the initial hearing officer's determination that Mr. Limon worked only from 6:00 a.m. to 3:00 p.m. on weekdays. *Limon v. Camacho*, Civ. Action No. 93-0508 (N.M.I. Super. Ct. Jul. 1, 1994) (Memorandum Decision and Order at 10). In particular, the court found the 6:00 a.m. starting time to be inconsistent with the finding in the same order that Mr. Limon performed services *prior* to 6:00 a.m., when cooking began. *Id.* at 9. The court also noted that there was no testimony from any witness that Mr. Limon's work schedule was different on Saturdays from his schedule on weekdays (other than Ms. Camacho's testimony that he did not work on Saturdays at all). *Id.* The court deemed arbitrary and capricious the finding that Mr. Limon had worked from 6:00 a.m. to 4:30 p.m. on Saturdays, because all of the witnesses at the hearing (other than Ms. Camacho) maintained that he worked from 4:30 *a.m.* to 6:00 *p.m.* In the view of the court, the work schedule set forth in the order on appeal was the result of a clerical error that transposed "a.m." and "p.m." *Id.* at 7-8. In sum, the court determined that Mr. Limon worked from 4:30 a.m. until 6:00 p.m., Monday through Saturday, and left undisturbed the Director of Labor's finding that Mr. Limon worked eight hours on Sundays. *Id.* at 11.

¶18 The court also held that § 4447(d) of the NWA mandates an award of liquidated damages and attorney's fees, and that the failure of the Director of Labor to make such an award constituted "agency action unlawfully withheld." *Id.* at 13. Further, the court ruled that even if

---

[4] Mr. Limon testified that it would have been impossible to accomplish all of the necessary tasks, from lighting the ovens to loading the trucks, in forty-five minutes. *Id.* at 123.

[5] In her brief, Ms. Camacho attempts to characterize the testimony of Faye Pangelinan as supporting the contention that the bakery was closed on weekends. Br. for Appellant at 11-12. The full transcript does not support this reading. Ms. Pangelinan clearly testified prior to the passage cited in the brief that the bakery operated on weekends. Appeal Tr., *supra*, at 17-19. Moreover, the citation in the brief ends just before the witness clarifies that the bakery was not closed "all day Saturday and Sunday," but, rather closed at 6:00 p.m. on those days. *Id.* at 25. Selective editing of transcripts is a time-honored lawyering skill, but this citation is misleading at best.

it were to apply the provisions of the Minimum Wage and Hour Act[6] instead of the NWA, an award of liquidated damages and attorney's fees would still be required. Pointing out that § 9243 of the Minimum Wage and Hour Act mandates payment of liquidated damages for willful violations of the wage laws, the court found that Ms. Camacho willfully underpaid Mr. Limon. *Id.* at 17.

¶19     At the conclusion of its decision, the trial court ordered the parties to stipulate to the number of weeks Mr. Limon worked for Ms. Camacho and to agree upon a calculation of wages due, based upon a formula provided by the court. *Id.* at 18-19. Ms. Camacho instead moved for reconsideration of the trial court's decision, raising for the first time the argument that the liquidated damages provision of the NWA violates constitutional equal protection guarantees. The trial court held a hearing on Ms. Camacho's motion at which her counsel did not appear. *See* Transcript of Proceedings at 2 (Aug. 25, 1994), Excerpts R. at___ ("Reconsideration Tr."). Mr. Limon and the AGO argued against reconsideration, both stating that the trial court had been correct in its review of the matter. Counsel for Mr. Limon moved for summary judgment on the total amount due, based on the starting and ending dates of Mr. Limon's employment as found in the record, stating that he had attempted unsuccessfully to obtain a stipulation from counsel for Ms. Camacho. *Id.* at 6. The AGO supported this motion in the following terms:

> I believe that in reading through all the material [...] I think the court could find the time that he started working and the time that he quit. [...]I don't intend to take sides here, but I think that[...]this whole thing is correct, the dates that [counsel for Mr. Limon] brings before the court. And for that reason I would ask the court to affirm its decision and to deny [the motion to reconsider] and to grant [the motion for summary judgment] and put an end to this matter.

*Id.* at 7. The court denied both motions and ordered Ms. Camacho to submit her calculation as to the total wages due within seven days. Order at 5 (Aug. 25, 1994), Excerpts R. at ___. Ms. Camacho complied, submitting a calculation based on forty-four weeks of work, or three weeks less than the number claimed by Mr. Limon. Judgment at 2 (Sep. 23, 1994), Excerpts R. at ____. The court resolved this discrepancy in favor of Mr. Limon and issued a judgment ordering Ms. Camacho to pay him back wages, liquidated damages and attorney's fees totaling $22,202.20. *Id.* at 7. Ms. Camacho timely appealed.

## ANALYSIS

### I.  Ms. Camacho's Appeal.

#### A.  Computation of Hours and Overtime.

1.  *Standard for Judicial Review of Labor Findings under the NWA.*

¶20     The Superior Court reviewed the findings of the Director of Labor regarding Mr. Limon's work schedule using the "arbitrary and capricious" standard of review set forth in § 9112(f)(2)(i) of the Commonwealth Administrative Procedure Act ("APA").[7] Limon *supra*, slip op. at 6. Ms. Camacho argues that the more exacting "substantial evidence" standard should apply. We agree.

¶21     The APA sets forth standards by which Commonwealth courts review the actions of administrative agencies. *See* 1 CMC § 9112. Among these standards, § 9112(f)(2)(i) requires a reviewing court to reverse an agency action which is found to be arbitrary or capricious. 1 CMC § 9112(f)(2)(i). However, § 9112(f)(2)(v) further requires a reviewing court to set aside an agency action found to be "[u]nsupported by substantial evidence in a case subject to sections 9108 and 9109" of the APA. 1 CMC § 9112(f)(2)(v). APA sections 9108 and 9109, in turn, establish requirements for notice and hearing prior to an agency action, and set forth procedural requirements for the conduct of administrative hearings. See 1 CMC §§ 9108-9109.

¶22     ■ Here, as required by the NWA,[8] the Division of Labor conducted hearings on Mr. Limon's complaint pursuant to § 9109 of the APA. Labor Order, *supra*, at 1. Transcripts of these hearings were part of the record before the Superior Court when it reviewed the matter, again pursuant to the judicial review provision of the NWA. 3 CMC § 4446. Because substantive law (the NWA) governing the Division of Labor here requires administrative hearings to be conducted pursuant to the procedures set forth in §§ 9108 and 9109 of the APA, we conclude that factual determinations by the Director of Labor must be reviewed under the more searching, "substantial evidence" standard of review called for in APA § 9112(f)(2)(v), not under the more deferential "arbitrary and capricious" standard established by § 9112(f)(2)(i).

2.  *The Findings in this Case.*

¶23     Having identified the proper standard of review,

---

[6]  4 CMC § 9211 et seq.

[7]  1 CMC § 9101 et seq.

[8]  The NWA requires the Division of Labor to conduct hearings pursuant to 1 CMC § 9109. *See* 3 CMC §§ 4444(a)(3) (initial hearing), 4445(b)(4) (hearing on appeal).

however, Ms. Camacho fails to argue coherently for its correct application to the facts of this case. She asserts that the trial court "erroneously ruled that the Hearing Examiner's decision was arbitrary and capricious. It should not rule that the complainant worked at 4:30 a.m. to 6:00 p.m. since it is not supported by the record." Br. for Appellant at 8. This claim has no merit.

¶24 The trial court held, and we agree, that there was no support in the record for the finding in the Division of Labor's order on appeal that Mr. Limon worked from 6:00 a.m. until 4:30 p.m. on Saturdays. The court's memorandum decision states that it "scoured the transcripts of both the July 1992 labor hearing and the January 1993 appeal [hearing] in order to glean some sense from the [Division of Labor's] determination of Mr. Limon's Saturday work schedule. . . ." *Limon, supra,* Memorandum Decision and Order at 8. So have we. There is no testimony from any witness on either side of the controversy that Mr. Limon worked from 6:00 a.m. to 4:30 p.m. on any day of the week. Rather, there is consistent testimony at the two hearings from Mr. Limon and his three supporting witnesses that he worked from 4:30 a.m. to 6:00 p.m., six days per week.

¶25 If the hearing officer who issued the order on appeal had disbelieved Mr. Limon's testimony, the reasonable alternative would have been to make a finding based on the testimony of Ms. Camacho and her supporting witnesses, that Mr. Limon worked from 6:00 a.m. until 2:00 or 3:00 p.m., Monday through Friday, and that he did not work at all on weekends. Instead, the order on appeal left undisturbed the initial hearing officer's finding that Mr. Limon worked from 6:00 a.m. to 3:00 p.m. Monday through Friday, but found that Mr. Limon worked from 6:00 a.m. to 4:30 p.m. on Saturdays and 2:00 p.m. to 6:00 p.m. on Sundays.[9]

¶26 Like the trial court, we conclude that the hearing officer who presided at the January 1993 hearing believed Mr. Limon's testimony as to his work schedule, but that she inadvertently transposed "6:00" and "4:30" in drafting the order, and failed to apply that credibility determination to the question of weekday work. *Limon, supra,* Memorandum Decision at 8. The fact that the order on appeal makes no mention of weekday hours bolsters the conclusion that the second hearing officer simply forgot that weekday work was one of the issues before her in the

administrative appeal. But whatever the explanation, the resulting conclusion is clear: having credited Mr. Limon's testimony regarding Saturday and Sunday work, the second hearing officer could not rationally have let stand the first hearing officer's conclusion that Mr. Limon only worked from 6:00 a.m. to 3:00 p.m. on weekdays. *Id.* at 9-10. This is especially true given the finding in the order on appeal that Mr. Limon "helped in food preparation *prior to* the actual cooking which begins at 6:00 a.m." Order on Appeal, *supra,* at 2.

¶27 In sum, the two sides to this dispute presented sharply differing versions of the facts to the Division of Labor. The order on appeal, which constitutes the final agency action for the purposes of judicial review under the NWA, cannot rationally be reconciled with either of these versions. However, the order on appeal clearly indicates that the second hearing officer believed Mr. Limon's side of the story. The Superior Court, in reviewing this matter, agreed[10] and issued an order which squares the specific findings of the agency with the underlying evidence in a consistent manner. We see no error.

**B.    Liquidated Damages and Attorney's Fees.**

¶28 Ms. Camacho claims that the Superior Court erred in awarding liquidated damages and attorney's fees to Mr. Limon. The pertinent section of the NWA provides:

> In any action taken directly by or on behalf of a nonresident worker, notwithstanding any other remedies that may apply the worker that prevails in such action shall recover unpaid wages and overtime compensation, an additional equal amount as liquidated damages, and court costs. In all cases the court shall, as part of the judgment, render a finding as to the merits of the action. The filing of an action which is determined by the court to be unfounded or without merit shall be considered a material breach of contract and shall prevent reentry into the Commonwealth by the nonresident worker in the event the nonresident worker attempts reentry into the Commonwealth within five years from the date of the court's decision. Any employer who violates the provisions of this chapter or breaches an employment contract with a

---

[9] Ms. Camacho also argues that "the testimony of Respondent that the bakery is closed on weekends is supported by substantial evidence." Br. for Appellant at 8. Appellant's argument confuses the *findings* of the agency, which must be "supported by substantial evidence" in order for a reviewing court to uphold agency action, with the testimony of the witnesses, which is the evidence itself. The order on appeal specifically stated that the bakery was *operational* on weekends. Order on Appeal, *supra,* at 2.

[10] The record fully supports this credibility determination. In addition to the factors noted above, the version of the facts given by Ms. Camacho and others was inconsistent (Ms. Camacho appears to have told the labor investigator one version, the initial hearing examiner another version, and the hearing examiner on appeal yet a third) or was not based on personal knowledge (neither Joe Camacho, David Camacho, nor Ronnie Cruz was personally involved in the bakery operation).

nonresident worker, in addition to any other damages which may be awarded the nonresident worker by the court, shall be awarded reasonable attorney fees. However, attorney fees shall not be recoverable against the Commonwealth.

3 CMC § 4447(d). This language requires only that the worker be the prevailing party. It does not require a showing of willfulness. Based on the clear mandate of this statute, the trial court correctly held that Mr. Limon is entitled to liquidated damages and attorney's fees.

¶29 Ms. Camacho repeats here an argument she made to the Superior Court, that the Federal Fair Labor Standards Act and the Commonwealth Wage and Hour Act, both of which mandate liquidated damages for willful violations of employment contracts, should be applied instead of the NWA. Br. of Appellant at 13-16. The trial court rejected this contention. *See Limon*, Memorandum Decision and Order at 15-16. We agree with the trial court.

¶30 ■■■■ The Wage and Hour Act, enacted in 1978, applies to all persons employed in the Commonwealth. *See* 4 CMC § 9212(e) (defining "employee"). The NWA, enacted in 1983 and amended in 1987, applies specifically to nonresident workers. *See* 3 CMC § 4412(i) (defining nonresident worker"). The liquidated damages provision of the NWA is therefore more recently enacted and more specifically applicable to the dispute at bar, which is a complaint by a nonresident worker under the NWA. *See* 2B Norman J. Singer, STATUTES AND STATUTORY CONSTRUCTION, §51.02 at 121 (5th ed. 1992) (later expression of the legislature controls over earlier law); *id.* §51.05 at 174 (more specific statute controls over more general one). Thus the NWA, not the Wage and Hour Act, governs the award of liquidated damages in cases involving nonresident worker complainants.

## C. Equal Protection Claim.

¶31 Lastly, Ms. Camacho advances the argument that the liquidated damages provision of the NWA violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Article I, § 6 of the Commonwealth Constitution. This constitutional challenge is premised on the theory that the Wage and Hour Act's requirement of a showing of willfulness before resident workers may receive liquidated damages, and the NWA's omission of such a requirement for nonresident workers, "creates a varying application of laws to residents and nonresidents within the jurisdiction of the Commonwealth." Br. for Appellant at 21. This contention is frivolous.

¶32 First, Ms. Camacho is neither a resident nor a nonresident worker. Therefore, she lacks standing to complain of any disparate treatment of resident versus nonresident workers. *See Commonwealth v. Oden*, 3

N.M.I. 186, 201-02 (1992).

¶33 Second, to the extent that Ms. Camacho is challenging the disparate treatment of *employers* of resident workers versus employers of nonresident workers, she fails to state a claim under established equal protection doctrine. The equal protection provisions of the U.S. and Commonwealth Constitutions require courts to scrutinize laws which establish a "suspect classification," such as one based on race, gender or national origin, or which burden the exercise of a "fundamental right." *In re Blankenship*, 3 N.M.I. 209, 219 (1992). Laws which do not fall into either of these categories are constitutional so long as they are rationally related to a legitimate state objective. *Id.*

¶34 The liquidated damages provision of the NWA easily passes these tests. Employers of nonresident workers do not, by any stretch of the imagination, constitute a "suspect class" of persons. *See id.* Indeed, Mr. Limon correctly observes that such employers do not constitute a separate class at all, since the NWA requires all employers of nonresident workers also to employ a minimum percentage of resident workers. Br. of Appellee at 21 (citing 3 CMC § 4436(a)). Furthermore, employment of nonresident workers is not a fundamental right. *Cf. Blankenship*, 2 N.M.I. at 219. The NWA gives preference to the employment of resident workers over nonresident workers. *See* 3 CMC § 4411(a).

¶35 ■■■■ Moreover, the liquidated damages provision of § 4447(d) clearly bears a rational relationship to a legitimate public purpose. According to the policy declaration of the NWA, the law was enacted "to provide stricter enforcement, control and regulation of nonresident workers." 3 CMC § 4411(b). As the Superior Court pointed out, § 4447(d) carries penalties against an employer who fails to pay a nonresident worker, and it also penalizes a worker who brings a meritless labor claim by rendering him or her excludable from the Commonwealth for five years. It is clear that these countervailing penalties are rationally related to the legitimate objective of penalizing meritless prosecution or defense of labor cases. Since there is no basis for applying a more stringent standard of judicial scrutiny, Ms. Camacho's constitutional challenge fails.

## II. The AGO's Arguments.

### A. Fact-Finding by the Superior Court.

¶36 The AGO asserted at oral argument, for the first time, that the Superior Court should have remanded this matter to the Division of Labor for further findings of fact.[11]

---

[11] Not only was this issue not raised below, but the AGO's position before us here is directly at odds with the comments the AGO made to the Superior Court at the hearing on the motion to

27

*Castro, supra*, 4 N.M.I. at 276, sets forth three sets of circumstances which, if present, allow us to consider an issue for the first time on appeal. None of these circumstances exist here. First, the issue raised is not purely a matter of law independent of any factual record. Whether the Superior Court improperly made findings of fact here requires examination of the record below. Second, no new legal theory has emerged nor any law changed during the pendency of the appeal.

¶37 Third, no plain error is apparent from the record. The provision of the NWA dealing with judicial review of Labor determinations specifies that "[j]udicial review shall be confined to the record." 3 CMC § 4446(b). Here, there is no indication in the Superior Court's memorandum decision of July 1, 1994, its order of August 25, 1994, or its judgment of September 23, 1994, that the trial court went outside of the record to determine any facts. Rather, in each instance the trial court based its determinations on the record before it.

¶38 In sum, the AGO's argument is not properly raised for the first time on appeal. Therefore, we will not address the issue.

### B. Division of Labor's Authority to Award Liquidated Damages and Attorney's Fees.

¶39 The AGO also argued at the hearing, without having briefed the issue or raised it below, that 3 CMC § 4447(d) grants authority only to the courts to award liquidated damages and attorney's fees, and not to the Division of Labor. Because this issue is purely a matter of law not dependent upon any factual record, it presents one of the sets of circumstances which permit us to hear an issue for the first time on appeal. *Castro, supra*, 4 N.M.I. at 276. Moreover, the issue is of considerable public importance, in view of the need to provide authoritative guidance to the Division of Labor in its handling of labor complaints. We will therefore consider the merits of the AGO's position.

#### 1. *Plain Language.*

¶40 ▮ We begin with the plain language of the statute. If it is clear, we will not interpret it in a contrary fashion. *Office of Att'y. Gen. v. Deala, supra*, 3 N.M.I. at 117. Examining § 4447(d), we observe that it encompasses three distinct remedies. The first sentence of the

subsection provides that "[i]n any action taken directly by or on behalf of a nonresident worker, notwithstanding any other remedies that may apply, the worker that prevails in such action shall recover unpaid wages and overtime compensation, an additional equal amount as liquidated damages, and court costs." 3 CMC § 4447(d). The second part of the subsection relates to barring reentry for workers found to have filed frivolous complaints:

> In all cases the court shall, as part of the judgment, render a finding as to the merits of the action. The filing of an action which is determined by the court to be unfounded or without merit shall be considered a material breach of the contract and shall prevent reentry into the Commonwealth by the nonresident worker in the event the nonresident worker attempts reentry into the Commonwealth within five years from the date of the court's decision.

¶41 *Id.* The last portion of § 4447(d) relates to attorney's fees:

> Any employer who violates the provisions of this chapter or breaches an employment contract with a nonresident worker, in addition to any other damages which may be awarded the nonresident worker by the court, shall be awarded reasonable attorney fees. However, attorney fees shall not be recoverable against the Commonwealth.

*Id.* The AGO contends that, by the plain meaning of the word "court," these three remedies are reserved for the courts of the Commonwealth, and the Division of labor may not employ them.

¶42 We agree that the usual meaning of the word "court" does not encompass administrative agencies. However, the word "court" does not appear until the end of the first sentence, which discusses liquidated damages. This sentence uses very broad, compulsory language, mandating an award of liquidated damages to a prevailing worker "[i]n any action taken directly by or on behalf of a nonresident worker, notwithstanding any other remedies that may apply . . . ." 3 CMC § 4447(d). The AGO argues that this sentence should be read in the context of the later provisions regarding reentry in the Commonwealth and attorney's fees. These provisions appear on their face to reserve to "the court" the authority to "render a finding as to the merits of the action" and to award attorney's fees. The AGO also points to the term "action" in the liquidated damages provision and claims that, in the context of the NWA as a whole, "action" means a civil action in a court, as opposed to a "grievance" or a "complaint," meaning an administrative proceeding before the Division of Labor.

---

reconsider the trial court's decision. Reconsideration Tr. at 7, Excepts R. at ___ (quoted *ante* at 8). The AGO's failure to file any briefs in this case also gives cause for concern. As a party in interest, the AGO has a responsibility to follow the Commonwealth Rules of Appellate Procedure, like any other party to an appeal. The Court, in the interests of justice, allowed the AGO to participate in the oral arguments here despite its failure to file the required brief. We are not likely to be so indulgent on future occasions.

**¶43** The AGO's proffered reading is certainly plausible on the face of § 4447(d) alone. However, it is not clear from this subsection that the term "action" must be construed in the limited sense that the AGO suggests. In order to arrive at a conclusive interpretation of this statute, we must widen the scope of our inquiry beyond the plain language itself.

### 2. *Statutory Construction.*

**¶44** ■■■■ When dealing with statutes which grant to administrative agencies remedial powers deemed important to public welfare, courts should avoid overly restrictive statutory interpretations which prevent the realization of the goals the legislature had in view. *See* 3 Singer, STATUTES AND STATUTORY CONSTRUCTION, *supra*, §65.03 at 329-30; *NLRB v. John S. Barnes Corp.*, 178 F.2d 156, 159(7th Cir. 1949) (looking beyond particular subsection of a federal statute to consider statute as a whole, its provisions, purpose and legislative history to determine NLRB regional directors' subpoena powers). We likewise cannot construe § 4447(d) conclusively without a careful review of all factors which might aid in the proper interpretation of the statute, keeping in mind that our primary aim is "to ascertain and give effect to the intent of the legislature." *Commonwealth Ports Auth. v. Hakubotan Saipan Ent., Inc.*, 2 N.M.I. 212, 221(1991) (internal quotation marks omitted). Such considerations are especially pertinent in this case, because the adjudication and redress of complaints by nonresident workers is a matter of serious public concern. Thus, in our review we must consider the legislative history and underlying policies of the NWA.[12]

**¶45** The NWA was originally enacted in 1983 as Public Law 3-66. In its original form, the NWA did not contain a requirement of exhaustion of administrative remedies. Thus, workers could file claims either at the Division of Labor or at the trial court. The language of the original § 4447(d) appeared to authorize attorney's fees and liquidated damages in either type of proceeding:

> In any action taken directly by, or on behalf of a non-resident worker notwithstanding any other remedies which may apply, the worker shall recover unpaid wages and overtime

compensation, an additional equal amount as liquidated damages, court costs and reasonable attorney fees. However, attorney fees shall not be recoverable against the Commonwealth.

P.L. 3-66, § 15(d) (1983). This provision does contain the word "court," but only in reference to "court costs." By its plain language, this statute would apply to actions before the Division of Labor as well as actions before the trial court.

**¶46** ■■■■ Public Law 5-32 repealed and reenacted § 4447(d) in 1987. P.L. 5-32, § 19 (1987). The reenactment left the first sentence of § 4447(d), regarding liquidated damages, largely unchanged. There is a presumption in statutory construction that "amendatory acts do not change the meaning of preexisting language further than is expressly declared or necessarily implied." *Peterson v. Employment Dept.*, 898 P.2d 210, 216 (Or. Ct. App. 1995); 1A Singer, STATUTES AND STATUTORY CONSTRUCTION, *supra*, §22.30 at 267. Here, with respect to § 4447(d), the main textual additions of P.L. 5-32 were to add the portion mandating that the court "make a finding as to the merits of the action," P.L. 5-32, § 19, and to create a separate provision governing attorney's fees.

**¶47** It is unclear whether the legislature also intended for these textual changes to divest the Division of Labor of the authority to award liquidated damages and attorney's fees. The available legislative history on this portion of P.L. 5-32 is quite sparse. The only relevant statement of legislative intent is found in the standing report of the joint conference committee which finalized the language of the amendment:

> Provisions have been added to expedite the review and appeal process for claims of violating an employment contract, and to close the loophole on allowing a nonresident worker to remain in the Commonwealth for long periods of time by merely filing a claim against their employer. However, for valid claims filed by the nonresident worker, additional protection has been provided them including the recovery of reasonable attorney fees.

Fifth Northern Marianas Commonwealth Legislature, *Joint Conference Committee Report No. 5-1* at 3 (Mar. 10, 1987). From this statement, we can discern that the intention of the legislature in amending the NWA in general, and § 4447(d) in particular, was to speed up the process of adjudicating worker complaints, compensate workers who file valid claims, and penalize workers who file frivolous ones.

**¶48** A reading which prevents the Division of Labor from wielding the enforcement powers of § 4447(d) creates incentives which conflict with the policy goal of speedy

---

[12] We also note that the Division of Labor has in the past interpreted § 4447(d) to authorize awards of liquidated damages and attorney's fees at the administrative level. *See Office of the Att'y. Gen. v. Rivera*, 3 N.M.I. 436, 441 (1993) (noting that Division awarded liquidated damages and attorney's fees, and threatened fines if amounts awarded remained unpaid). Where the meaning of a statute is unclear, the construction placed upon it by the agency charged with its administration is entitled to consideration. *See* 3 Singer, STATUTES AND STATUTORY CONSTRUCTION, *supra*, §65.03 at 330.

adjudication of worker disputes. A worker with a meritorious grievance would do whatever he or she could to pursue his or her claim beyond the administrative remedies of the Division of Labor and into the Superior Court, so that he or she could reap attorney's fees and liquidated damages. In this scenario, if the agency upheld the majority of a claim but denied some small portion, the worker would nevertheless appeal, if only to obtain liquidated damages and attorney's fees on the claim. Likewise, a worker who prevailed on every aspect of the claim would for the same reason take a "hair trigger" approach to filing an action at the Superior Court under § 4434(f) of the NWA for collection of the amounts awarded by the agency.[13] Thus, the effect of the AGO's proffered reading of § 4447(d) would be to prolong the process of adjudication for successful claimants, not to expedite matters as the legislature intended.

¶49 Denying the Division of Labor the power to declare a complaint frivolous and prevent a complainant's reentry into the Commonwealth for five years would likewise limit that provision's usefulness in penalizing unfounded complaints. This construction would completely eliminate any disincentive to file an unfounded administrative complaint, since a worker would face no penalty until the stage of judicial review. Moreover, to define the term "action" to mean court action only would mean that, even the judicial review stage, the court could not "render a finding as to the merits" of the worker's underlying complaint, but only as to whether the appeal itself was meritorious. Some workers who filed frivolous appeals would be penalized under this reading, to be sure; but frivolous claims in general could be far more effectively prevented if the agency itself were empowered to use § 4447(d) against unfounded complaints. In sum, the restrictive reading of § 4447(d) proffered by the AGO would produce results at odds with the intent of the legislature.

¶50 ▉ Considering the competing factors discussed above, we conclude that, despite its repeated insertion of the word "court" in § 4447(d), the legislature did not intend a construction of the statute that would give only the court the power to award liquidated damages and

attorney's fees. Rather, we adopt a broad reading of the statute which will accomplish most effectively its remedial purposes of expediting the resolution of workers' grievances. *Cf. Elayda v. J & I Const. Co.*, 1 CR 1025, 1041 (D.N.M.I. App. Div. 1984) (noting that failure to award attorney's fees for review of administrative claim under Wage and Hour Act would encourage parties "to file a lawsuit at the outset to assure that if they prevailed they could recover attorney's fees"). We therefore reject the interpretation of the statute offered by the AGO and affirm the construction followed by the Superior Court in this matter.

### III. Attorney's Fees for This Appeal: Order to Show Cause.

¶51 Mr. Limon claims entitlement to an award of fees expended on this appeal, pursuant to 3 CMC § 4447(d). Given the mandatory language of the statute, we agree that these fees should be awarded. Mr. Limon is also entitled to court costs, pursuant to Com. R. App. P. 39. Mr. Limon shall submit a computation of all such fees and costs within fourteen days of this order. Ms. Camacho shall have seven days thereafter to object to Mr. Limon's statement.

¶52 ▉ In addition, we have serious concerns that Ms. Camacho's appeal does not meet the standards of merit and good faith required by Com. R. App. P. 38. In reviewing this matter, we found appellant's positions on the facts to be internally inconsistent and her legal positions (with the exception of her position that the substantial evidence standard should be applied) to be wholly without merit. The fact that this case has now been pending for over four years since the filing of Mr. Limon's initial labor complaint adds to our displeasure that Ms. Camacho and her counsel chose to add another twenty months to the procedure by filing an appeal which no reasonable person would think likely to succeed on the merits. *See Tenorio v. Superior Ct.*, 1 N.M.I. 112, 123 (1990) (defining "non-frivolous" legal argument). Accordingly, we will grant appellant thirty days in which to show cause why she should not be taxed double attorney's fees and costs incurred in this appeal, and why both Ms. Camacho and her counsel should not be held jointly and severally liable for this sanction. Mr. Limon and the AGO may have seven days after receiving Ms. Camacho's submission to file any response. Upon receiving these papers from the parties, the Court will issue a final ruling and will issue specific instructions for remand of this matter to the Division of Labor for collection of all amounts due, and for the possible imposition of fines pursuant to 3 CMC § 4447(c) in the event of any late payment.

---

[13] Section 4434(f) authorizes a worker to file suit:

> after the Director or his designee, after a hearing, has issued a decision on the complaint favorable to the nonresident worker and the employer fails or refuses to pay any assessment made by the Director within ten days after receiving notification of the Director's decision, the entire sum of money that the decision says is owed by the employer to the employee.

3 CMC § 4434(f). This type of suit is analogous to an order in aid of judgment.

## CONCLUSION

**¶53** For the foregoing reasons, we **AFFIRM** the judgment of the Superior Court in this matter. In addition, we hereby **ORDER** appellee to submit within fourteen days of this order a statement of attorney's fees and court costs. Finally, we hereby **ORDER** appellant to show cause within thirty days why she should not be taxed double costs for filing a frivolous appeal. Each party (including the AGO) may have an additional seven days to respond to the submission of the other party or parties.