Renato U. **Barte,**
Complainant/Appellant,
v.
**Saipan Ice, Inc.,**
Respondent/Appellee.
Appeal No. 97-011
Civil Case No. 95-1049
Labor Case No. 94-464
October 9, 1997

Argued and Submitted September 30, 1997

Counsel for Appellant: Reynaldo O. Yana and Antonio M. Atalig, Saipan.

Counsel for Appellee: Michael W. Dotts, Saipan (Law

Offices of O'Connor, Berman, Dotts & Banes).

BEFORE: TAYLOR, Chief Justice, VILLAGOMEZ, Justice and LIZAMA, Special Judge.

TAYLOR, Chief Justice:

¶1 ■ Appellant Renato U. Barte ("Barte") appeals the Superior Court's judgment dated April 22, 1997 affirming the denial of his labor complaint for overtime wages. We have jurisdiction under title 1, § 3102(a) of the Commonwealth Code. We affirm.

## ISSUES PRESENTED AND STANDARD OF REVIEW

¶2 The issues before us are:
I. Whether the Superior Court erred in finding that Barte failed to prove by a preponderance of evidence that he was owed $45,135.20 in overtime wages by his employer; and
II. Whether Barte is entitled to overtime wages, liquidated damages, costs and attorney's fees.

¶3 The Administrative Procedures Act ("APA") sets forth standards by which Commonwealth courts review the actions of administrative agencies. *See* 1 CMC § 9112. Section 9112(f)(2)(v) requires a reviewing court to set aside an agency action found to be "[u]nsupported by substantial evidence in a case subject to sections 9108 and 9101" of the APA. 1 CMC § 9112(f)(2)(v). As this is an appeal from an administrative decision of the Division of Labor and Immigration, the Superior Court must review all factual determinations under the "substantial evidence" standard of review. *Limon v. Camacho*, 1996 MP 18 ¶22, 5 N.M.I. 21.

¶4 ■ We review de novo the Superior Court's determination of whether the decision of the Director of Labor was based upon substantial evidence. *Limon, supra,* 1996 MP 18 ¶25, citing *In re Hafadai Beach Hotel Extension,* 4 N.M.I. 37, 41 (1993).

## FACTS AND PROCEDURAL BACKGROUND

*I. Administrative Proceedings:*

¶5 Barte filed a complaint with the Labor Division for wrongful termination[1] which was subsequently amended

on August 15, 1995 to include a claim for overtime wages owed pursuant to three one-year employment contracts. Appellant's total claim for overtime wages was $45,135.20 plus liquidated damages for the same amount, $45,135.20, attorney fees and costs.

¶6 After a six day hearing where eighteen witnesses testified, on October 12, 1995, the Director of Labor Division, through a designated Hearing Officer, Mr. Mark Zachares ("Zachares"), denied Barte's claim for overtime wages, liquidated damages and attorney fees. Zachares also denied Barte transfer relief, ordered the Division of Immigration to begin immediate deportation proceedings against him, ordered the Division of Labor to cancel Barte's Temporary Work Authorization, and enjoined the Division of Labor from issuing Barte future Temporary Work Authorization.[2]

¶7 Barte appealed the Administrative Order to the Secretary of Labor and Immigration ("the Secretary"). The Secretary neither reviewed nor disturbed the Hearing Officer's findings of fact, and affirmed on appeal. Barte then appealed the Administrative Order to the Superior Court.

¶8 The Superior Court found that substantial evidence exists in the record to support the Hearing Officer's finding that Barte did not prove by a preponderance of the evidence that he performed work for which he was not properly compensated.[3] Barte timely appealed.

*II. The Employment Relationship:*

¶9 On December 2, 1991, Barte and appellee Saipan Ice, Inc. ("Saipan Ice") entered into a one year employment contract approved by the Chief of Labor. His one-year contract was subsequently renewed with Saipan Ice for two additional one-year terms. Barte was employed in a

---

13, 1995) ("the Settlement"). The parties agreed that the Settlement "shall not be construed as an admission by the respondent that it illegally terminated the employment of the complainant, or in any way violated the law." *Id.* at 1-2. Appellant in his opening brief comes dangerously close to a deliberate misrepresentation and outright falsehood when he states that "the parties stipulated that Saipan Ice, Inc. did *breach the employment contract* and Barte was awarded the sum of $4,651.00." Appellant's Opening Brief at 2 (emphasis added). At oral argument, when appellant's counsel was questioned about the statement, he "begged the Court for its forgiveness" for the inaccuracy.

[2] *Barte v. Saipan Ice,* Labor Case No. 94-0464 (Administrative Order Oct. 12, 1995) ("Administrative Order").

[3] *Barte v. Saipan Ice, Inc.,* Civil Action No. 95-1049 (N.M.I. Super. Ct. April 22, 1997) (Decision and Order at 7) ("Decision and Order").

---

[1] The parties entered into a stipulated settlement agreement on the issue of illegal termination wherein the employer paid Barte $4,651.00. *Barte v. Saipan Ice,* Labor Case No. 95-0464 (Sept.

managerial position, and while Saipan Ice never pays managerial employees overtime, each of his contracts specified a monthly salary and 1.5 per _____ [blank].[4]

¶10 Barte never questioned his hours of work and non-payment of overtime during the course of three contracts, although he was responsible, as a General Manager, for approving and limiting other Saipan Ice employees' overtime hours. Administrative Order at 5. Barte first raised the issue of non-payment of overtime in an amended Complaint, filed on August 15, 1995. To support his claim for overtime, Barte computed all of his alleged overtime pay two weeks prior to his filing of a labor case and testified that the computations were the exact hours he worked dating back to the first day of his employment with Saipan Ice to his last. *Id.* at 8.

¶11 The Hearing Officer determined that Barte was not a credible witness. *Id.* at 19. He further found that the contracts executed between the parties were form contracts obtained from the Department of Commerce and Labor and contained the blank space (1.5 per ____) relating to overtime pay pursuant to the former CNMI Chief of Labor's unwritten but mandatory policy. *Id.* at 7. Among other findings, the Hearing Officer found that Barte failed to prove his claim by a preponderance of the evidence.

## ANALYSIS

### I. Is Barte entitled to overtime?

¶12 The only issue left, which is dispositive for this appeal, is whether the Hearing Officer's findings of fact that Barte failed to prove by a preponderance of the evidence that he is entitled to overtime compensation is erroneous.

¶13 Barte claims he proved by a preponderance of the evidence as a matter of law and fact that he worked overtime and was entitled to overtime compensation. Barte further claims the Superior Court erred by not considering the testimony of Barte and corroborating testimony of other witnesses as sufficient to sustain Barte's burden of proof.

¶14 Saipan Ice urges this Court not to disturb on appeal the Hearing Officer's findings of fact made after a six day hearing where eighteen witnesses testified. The Hearing Officer's determination that Barte's testimony was not credible should not be questioned as he had first hand knowledge to evaluate and determine the credibility of the witnesses presented. Barte's "evidence" of his claim for unpaid overtime compensation was merely a hand written memorandum he prepared two weeks prior to the filing of his labor complaint. In support of his claim for unpaid

overtime wages, Barte testified that he had worked almost the same hours for three consecutive years, without taking into account time off for lunches or breaks, days off for Typhoons, or even holidays.

¶15 Anthony Pellegrino ("Pellegrino"), owner of Saipan Ice, testified at the Labor Hearing that at the initial interview when Barte was hired, Pellegrino explained that as a manager, Barte was expected to work up to six days a week and was not entitled to overtime pay. Pellegrino also explained that he was more concerned about the quality of work rather than the quantity of hours put into the job.[5] Pellegrino emphasized that Barte's time would be his own and he would have complete discretion as to the number of hours he would work, provided he produced the expected results. ER 111 at 497 ln. 12-14 and at 542 ln. 5-11. Finally, Pellegrino explained that it had always been the policy for all of Pellegrino's group of companies, that all managerial employees did not receive overtime pay. ER 111 at 547 ln. 22-25. Instead, Pellegrino's management team received higher pay and extra bonuses or perks that made the hard work worthwhile.[6]

¶16 In addition to Pellegrino's testimony, other employees directly contradicted Barte's testimony. For example, Barte claimed he arrived at work every morning at 8:00 a.m., and then later came in at 8:30 a.m. Employees testified they rarely saw him before 8:30 a.m. Barte testified he worked the entire day straight through. The employees testified, to the contrary, that Barte took frequent breaks to run personal errands such as picking up his children from school. Most significant in number of hours was Barte's claim that he stayed until 7:30 p.m. every night with sales staff, counting in their remittances. These same sales staff testified that they almost never remained past 6:00 p.m. When they did stay late, it was never beyond 6:30 p.m. and they were not being paid overtime to sit with Barte, while Barte now claims he was accruing overtime pay. Appellee's Brief at 33-34.

¶17 ██ In addition to the evidence presented, this Court gives due deference to the Hearing Officer's findings that Barte was not a credible witness. Credibility was crucial to the Hearing Officer's determination that Barte failed to prove he was entitled to overtime pay and that he worked a set number of overtime hours. As the record was amply supported by substantial evidence, the Superior Court's finding were proper. We decline to disturb the ruling on

---

[4] Barte's second and third contract specified a salary plus 1.5 per *hour*. ER at 9-18.

[5] *See* Testimony of Anthony Pellegrino, ER 111 at 493 ln. 8-20, and at 530 ln. 1-10.

[6] In addition to Barte's normal wages. he was given: (a) profit sharing equivalent to 3%-5% of the total net profit; (b) public relations allowance in the amount of $650.00 per month without the need to account for the same: (c) a new car; and, (d) a monthly housing allowance. ER 111 at 524 ln. 12-19 and at 530.

appeal.

## II. Can Barte Recover Liquidated Damages, Attorney's Fees and Costs?

¶18 Barte must first succeed on his claim for unpaid overtime wages in order to recover liquidated damages, attorney's fees and costs as 3 CMC § 4447(d) states:

> In any action taken directly by or on behalf of a nonresident worker, notwithstanding any other remedies that may apply, the worker that *prevails* in such action shall recover unpaid wages and overtime compensation, an additional equal amount as liquidated damages, and court costs . . . . Any employer who . . . breaches an employment contract with a nonresident worker, in additional to any other damages which may be awarded the nonresident worker by the court, shall be awarded *reasonable attorney fees*.

3 CMC § 4447(d) (emphasis added). Barte claims he is entitled to recover $45,982.50 in overtime wages plus an additional $45,982.50 as liquidated damages, attorney's fees and costs. Because we find that Barte failed to prove his claim for overtime wages, he is not entitled to liquidated damages, attorney's fees and costs.

## III. Sanctions

¶19 ▪ In the reply brief, Barte asks the Court to sanction Saipan Ice for "wasting the court's time and our time" in having to defend irrelevant, immaterial and libelous accusations of criminality which are immaterial and scandalous, injected for the sole purpose of prejudicing Barte. Reply Brief at 2. At oral argument, appellant's counsel stated they were seeking sanctions in a "nominal amount" for the amount of time spent responding to Saipan Ice's allegations of outstanding arrest warrants charging Barte with criminal embezzlement and fraud under Philippine law, and tax evasion.

¶20 At oral argument, appellee's counsel stated that all references of criminal misconduct were fully supported by the record and were used by the Hearing Officer for the limited purpose of determining Barte's credibility as a witness, and not for the truth of the matter asserted. We therefore see no misconduct by Saipan Ice for citing to excerpts fully supported by the record and consequently, sanctions are not warranted.

## CONCLUSION

¶21 For the foregoing reasons, we hereby affirm the Superior Court's decision dated April 22, 1997 affirming the denial of Barte's labor complaint for overtime wages.

Appellant's request for liquidated damages, attorneys fees and costs is **DENIED**. Appellant's request for sanctions is also **DENIED**.